**CONTRA COSTA COUNTY ex rel. HENRISSA S. TUAZON,** Plaintiff–Appellee, v. **POLICARPIO P. CARO, JR.,** Defendant–Appellant

NO. 13903

(URES NO. 88–0550)

JULY 26, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

## AMENDED OPINION OF THE COURT BY BURNS, C.J.

Defendant Policarpio P. Caro (Father) appeals the family court's May 9, 1989 $11,808.00 Judgment (May 9, 1989 Decree–Judgment) in favor of plaintiff Contra Costa County *ex rel.* Henrissa S. Tuazon (Plaintiff). We vacate the May 9, 1989 Decree–Judgment and remand for further proceedings consistent with this opinion.

## FACTS

The relevant facts, listed chronologically, are as follows:

| | |
|---|---|
| February 3, 1963 | Henrissa S. Tuazon (Mother) and Father are married. |
| September 3, 1963 | First Son is born. |
| January 15, 1965 | Second Son is born. |
| July 26, 1966 | Third Son is born. |
| June 4, 1968 | Fourth Son is born. |
| August 4, 1969 | A Daughter is born. |
| January 26, 1973 | A decree of divorce is entered in First Circuit Family Court FC–D No. |

76699 that (1) awards Mother custody of the five minor children, subject to Father's rights of reasonable visitation; (2) orders Mother to keep Father informed of the residence address of the children; and (3) orders Father to pay Mother child support of $350.00 per month commencing February 1973.

April 16, 1975 — According to Mother, on this date she provided the family court with her future residence address at 767 Humboldt Street, Richmond, California 94805. Mother states that Father "knew of this and he even send [sic] us a note[.]" In her April 18, 1988 complaint for support filed in California, Mother lists her residence as 767 Humboldt Street, Richmond, California.

July 17, 1975 — Father marries Lucille.

May 6, 1975 — Father and Lucille's first Daughter is born.

May 6, 1975 — Mother files a post–divorce decree motion seeking, among other orders, a $100.00 per month increase in child support.

September 17, 1975 — Family court approves and orders Mother's and Father's stipulation settling Mother's May 6, 1975 motion. It reduces Father's child support obligation to $175.00 per month, commencing April 1, 1975, payable in two

| | |
|---|---|
| | installments of $87.50 on the 5th and 20th of each month through the chief clerk of the court. It schedules a November 12, 1975 hearing to review the child support issue. Both parties are represented by counsel. |
| November 12, 1975 | The child support review hearing commences. |
| November 28, 1975 | Family court enters an order continuing the child support review hearing. |
| June 1977 | Father makes his last $175.00 per month child support payment through the chief clerk of the court. |
| June 1977 | Mother, stepfather, and the five children relocate without informing Father of their new location. Father is unsuccessful in his efforts to locate them. [1] |
| February 19, 1981 | Father and Lucille's second Daughter is born. |
| Father's Day 1982 | Second Son telephones Father. |
| June 21, 1982 | Second Son's letter to Father reveals the children's residence address in Richmond, California. |
| December 12, 1984 | California authorities place Daughter in a foster home. |
| June 29, 1985 | Daughter and Second Son return to Hawaii to live with Father. |
| August 9, 1985 | Daughter gives birth to Granddaughter. |

---

[1] If the April 16, 1975 entry mentioned above is true, Father's efforts to locate his children were unsuccessful because his efforts were unreasonably deficient.

| | |
|---|---|
| March 1986 | Daughter and Granddaughter move to California to live with an aunt. |
| April 18, 1988 | Mother initiates a uniform reciprocal enforcement of support act (URESA) action in California to collect past–due child support from Father. |
| August 1, 1988 | Mother's URESA action is filed in Hawaii. |
| September 18, 1988 | Father is served in the URESA action. |
| March 20, 1989 | Family court hears the URESA case. |
| May 9, 1989 | Family court determines that the child support due is $35.00 per child per month; terminates child support for each child when the child reached age 18; holds that the Hawaii Revised Statutes § 657–5 (1985) ten–year statute of limitation was not tolled until Father was served on September 18, 1988;[2] credits Father with the $1,002.00 he paid for medical services to Daughter; determines that Father was not required to pay Mother child support for Daughter during the nine months Daughter lived with Father; enters the $11,808.00 May 9, 1989 Decree–Judgment in favor of |

---

[2] Absent clear statutory language to the contrary, "commencement of the action" tolls the statute of limitations. *Stephens v. Hamrick*, 86 N.C. App. 556, 358 S.E.2d 547 (1987); *Cohen v. Cohen*, 352 Pa. Super. 453, 508 A.2d 561 (1986). An action is "commenced" for URESA purposes when the obligee files the action in the initiating state. *See* Fox, *The Uniform Reciprocal Enforcement of Support Act*, 4 FAM. L. REP. (BNA) 4017 (1978).

|                | Mother[3] and against Father; and expressly makes the judgment a civil judgment. |
| July 25, 1989  | Family court enters its Findings of Fact, Conclusions of Law, Decree. It awards Mother judgment against Father in the sum of $11,800.00. It does not explain the $8.00 reduction. |

## DISCUSSION
### I.

Father contends that the family court's July 25, 1989 Conclusion of Law 1 is wrong. It states as follows: "The concealment of the subject children by the custodial parent from the other would not excuse the non–custodial parent from the duty of paying child support for the duration of the concealment."

We conclude that Conclusion of Law 1 is statutorily mandated. Hawaii Revised Statutes (HRS) Chapter 576 (Supp. 1989), Hawaii's URESA (HURESA), states, in HRS § 576–39.3, that "[t]he determination or enforcement of [a] duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." HRS § 576–1 defines "obligee" as "any person to whom a duty of support is owed or a person . . . that has commenced a proceeding for enforcement of an alleged duty of support[.]"

In this case, Mother and the five children are all "obligees." Thus, as applied in this case, HRS § 576–39.3 states as follows: "The . . . enforcement of [Father's] duty of support owed to [the five children] is unaffected by any interference by [Mother] with [Father's] rights of . . . visitation granted by [the Hawaii family

---

[3] The record does not explain why the Decree–Judgment was entered in favor of Mother and not Plaintiff.

court on January 26, 1973]." *See Moffat v. Moffat*, 27 Cal. 3d 645, 165 Cal. Rptr. 877, 612 P.2d 967 (1980); *In re Adoption of K.L.J.K.*, 224 Mont. 418, 730 P.2d 1135 (1986); *Board of Social Servs. ex rel. Florida for Lohman v. Lohman*, 229 N.J. Super. 485, 551 A.2d 1051 (1989).

*Moffat, supra,* is a URESA case where the custodial parent for the first time obtained a court order requiring the non–custodial parent to pay child support. Prior to and at the time of the order, the custodial parent refused to allow the non–custodial parent to visit the children. However, the custodial parent did not conceal herself and the children from the non–custodial parent.

Father contends that cases involving interference, not concealment, and future child support, not arrearages, are inapposite. He asks us to follow *In re Marriage of McLucas*, 210 Cal. App. 3d 87, 258 Cal. Rptr. 133 (1989). *McLucas* holds that *Moffat* does not apply to non–URESA cases where (1) the custodial parent seeks to collect child support arrearages from the non–custodial parent for the period of time when the custodial parent concealed herself or himself and the child from non–custodial parent; (2) the welfare of the child is not involved; and (3) a public agency is not seeking reimbursement. Its rationale is that since the welfare of the child is not involved and the non–custodial parent could not find the custodial parent to enforce his or her visitation rights, the denial of visitation is a defense.

For four reasons, we decline to follow *McLucas*. First, since our case is a URESA case *Moffat*, not *McLucas*, is the controlling California case law on the subject.[4]

---

[4] The proposed amendments presented at the 1990 meeting of the National Conference of Commissioners on Uniform State Laws (1990 Proposed Amendments) are, in relevant part, as follows:

SECTION 13. (Old 23) RULES OF EVIDENCE.

\* \* \*

Second, as previously noted, HURESA states, in HRS § 576–39.3, that "[t]he determination or enforcement of [a] duty of

---

(c) If the action is ~~based on~~ one to enforce a support order issued by another ~~court~~ tribunal, a certified copy of the order ~~shall be received~~ is admissible as evidence of the ~~duty of~~ support order, subject only to any defenses available ~~to an obligor~~ with respect to ~~paternity (Section 27)~~ parentage or to a defendant in an action or a proceeding to enforce a ~~foreign~~ money judgment of another state. ~~The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.~~

SECTION 26. (Old 39) ~~REGISTRATION~~ ENFORCEMENT PROCEDURE; NOTICE.

* * *

(b) Promptly upon registration, the clerk of the ~~court~~ tribunal shall send by certified or registered mail to the obligor ~~at the address given~~ a notice of the registration and the alleged arrearage amount with a copy of the registered support order and the ~~post office~~ obligee's address ~~of the obligee~~. The notice must inform the obligor that any motion to vacate the registration must be filed within 20 days after the receipt of the notice and that failure to seek relief will result in confirmation of the order and any arrearage amount. The notice also shall inform the obligor that upon confirmation the registered order will be treated by the tribunals as a support order issued by a tribunal of this State. ~~He~~ The clerk shall also docket the case and notify the prosecuting ~~attorney of his action~~ agency of the docketing. The prosecuting ~~attorney~~ agency shall ~~proceed diligently to enforce the order~~ represent the obligee in the enforcement of the existing order.

SECTION 29. (Old 40) EFFECT OF REGISTRATION; ENFORCEMENT PROCEDURE.

* * *

(a) The defendant has [120] days after receipt of the notice of registration under Section 26 in which to petition the tribunal to vacate the registration or for other relief. Refusal to claim the notice shall constitute receipt. If a petition is not filed by the defendant, the registered support order is confirmed.

(b) At a hearing on defendant's petition to vacate registration or seek other relief, the defendant may present defenses available in an action to enforce a money judgment of another state. If the defendant offers as a defense the obligee's failure to comply with non–support provisions of the order, the tribunal may stay the proceedings pending a hearing and order by

support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." To apply the *McLucas* rationale in HURESA cases, we would have to hold that the phrase "any interference" does not include "total concealment." We are not at liberty to disregard the

---

the rendering tribunal concerning that assertion. A registered support order may be stayed under the same grounds and procedures as a support order issued by this State. The tribunal has the power to issue temporary support orders during the pendency of any stay of the proceedings.

(c) If the defendant fails to raise a valid defense or fails to petition the tribunal within the time limits of subsection (a), the tribunal shall enter an order confirming the registered support order and determining any arrearage amount.

(d) Upon confirmation, the support order of another state must be treated in the same manner as a support [order] issued by a tribunal of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner, including any wage withholding provisions applicable in this State. Modification of such an order shall be governed by Section 30 of this [Act].

(e) Participation in a registration proceeding under this [Act] does not confer jurisdiction on the responding tribunal over any party for purposes of any other relief.

### COMMENT
\* \* \*

The new language in subsection (b) concerning non–support provisions of the order makes clear that if the defendant seeks to justify his failure to comply with a support order by alleging violation of non–support provisions by another party (usually the custodial parent) that litigation of this question should be conducted by the rendering tribunal. To prevent frivolous utilization of this procedure for dilatory purposes, the subsection provides that in the interim the responding tribunal has the power to issue temporary support orders.

\* \* \*

Under these 1990 proposed amendments, if, in California, interference with court–ordered rights of child visitation is a defense against a claim for child support, then Father would be allowed a reasonable opportunity to litigate that defense in California.

plain meaning of the legislature's choice of words, especially when the words are the words of a national uniform act.

Third, since the primary consideration is the best interest of the child, which includes the child's visitation with his or her non–custodial parent, we question the wisdom of the *McLucas* rationale. *McLucas* tells the non–custodial parent that the custodial parent's concealment of himself or herself and the child legally cancels the non–custodial parent's duty to pay child support during the period of the concealment. It motivates the non–custodial parent not to find the custodial parent and the child. It motivates the custodial parent who does not want the non–custodial parent to have any contact with the custodial parent and the child to conceal himself or herself and the child from the non–custodial parent in the realistic hope that the non–custodial parent will be satisfied with the cancellation of his or her duty to pay child support.

Fourth, in many cases, no matter what the child's age, payment of a child support arrearage has no effect upon the welfare of the child. It merely reimburses the custodial parent the money he or she previously paid for the welfare of the child that should have been paid by the non–custodial parent.

## II.

The family court's July 25, 1989 Conclusion of Law 6 states: "The defenses of waiver, estoppel, and laches are unavailable in this case."

Father contends that Conclusion of Law 6 is wrong. We agree, but only to the extent that Father legitimately bases his defenses of waiver, estoppel, and laches on facts other than Mother's alleged concealment of the children.

In a HURESA action by a decree creditor to collect court–ordered child support arrearages, the decree debtor may assert the equity equivalent of any relevant defense that a judgment debtor in

a similar situation would be allowed to assert except that HURESA
bars the decree debtor from asserting the defense that the decree
creditor interfered with his court–ordered rights of child custody or
visitation. In *Lindsey v. Lindsey*, 6 Haw. App. 201, 206, 716 P.2d
496, 500 (1986), we stated:

> The designated payee of past–due court–ordered child
> support is a decree creditor and, like a judgment creditor,
> can do whatever he or she wants with the decree receiv-
> able subject, however, to the family court's superior
> interest in the child's present and future welfare. The
> decree creditor may waive, give, release, compromise,
> sell, enforce, or do nothing with his or her decree receiv-
> able.

Father is entitled to an opportunity, on remand, to prove the
essential elements of the relevant defenses available to him. *See
Hunter v. Hunter*, 52 Wash. App. 265, 758 P.2d 1019 (1988),
*review denied*, (1989).

### III.

In his March 20, 1989 oral decision, the family court judge
stated: "The Court will leave the judgment credited [sic] to what-
ever civil means are available to collect. That's up to them to
try and collect." As a result, the last paragraph in the May 9,
1989 Decree–Judgment states as follows: "IT IS FURTHER
ORDERED THAT [Mother] may collect by whatever means
available under the rules and statutes of civil procedure providing
for satisfaction of a civil judgment."

Father contends that the above paragraph is void because it
retroactively modifies a child support order. We disagree. The
challenged paragraph specifically accords civil judgment status to
the May 9, 1989 Decree–Judgment and authorizes Mother to take
it to the civil court and have the civil court enforce it in the same

manner as the civil court enforces judgments entered by civil courts.

The above paragraph may have been entered because of the questions raised in footnote 2 in *Smith v. Smith*, 3 Haw. App. 170, 173 n.2, 647 P.2d 722, 724 n.2 (1982) (*Smith* footnote 2). Likewise, Father's contention may be the result of his misunderstanding of *Smith* footnote 2. There we discussed the situation where the family court determined the amount of the child support arrearage and then authorized its payment on a deferred payment basis. We concluded that the deferred payment authorization was not a retroactive modification. We queried whether the deferred payment authorization precluded the obligee from taking the order fixing the arrearage to civil court for collection on a nondeferred basis. We implicitly raised, but did not answer, the questions of whether family court child support arrearage decrees not involving deferred payment authorizations automatically have civil judgment status or whether, and under what circumstances, they may enjoy such status. We will now answer those questions.

A court–ordered child support payment becomes an enforceable decree when the payment becomes due. *Lindsey v. Lindsey*, *supra*. A due but unpaid court–ordered child support payment (decree arrearage) is enforceable in family court. The family court may authorize payment of a decree arrearage on a deferred payment basis. *See Smith v. Smith*, *supra*. Where the family court authorizes payment of a decree arrearage on a deferred payment basis and payment is not made, the deferred payment arrearage then becomes a decree–judgment debt enforceable in both family court and civil court. Where the family court declines to authorize payment of a decree arrearage on a deferred payment basis, the arrearage then becomes a decree–judgment debt enforceable in both family court and civil court.

The decree–judgment creditor may take a decree–judgment to civil court and have the civil court enforce it in the same manner as

the civil court enforces judgments entered by civil courts. The family court's express decision to accord decree–judgment status to a child support decree arrearage is an implied decision not to authorize payment of the decree arrearage on a deferred payment basis.

Here, the family court expressly accorded decree–judgment status to the child support decree arrearage. It thereby impliedly decided not to authorize payment of the decree arrearage on a deferred payment basis. We conclude that the family court's action was not an abuse of its discretion.

## CONCLUSION

Accordingly, we vacate the family court's May 9, 1989 $11,808.00 judgment in favor of plaintiff Contra Costa County *ex rel.* Henrissa S. Tuazon and against defendant Policarpio P. Caro, Jr., and remand for further proceedings consistent with this opinion.

*Donald S. Nishimura* for defendant–appellant.

*John R. Gibbs*, Deputy Corporation Counsel (*Rosemary McShane* and *Naomi S. Campbell*, Deputies Corporation Counsel, on the briefs) for plaintiff–appellee.