**PAULINE ANNE BROOKS**, Plaintiff–Appellee, v. **PHILIP NATHAN MINN**, Defendant–Appellant

NO. 15592

(CIV. NO. 89–3025)

SEPTEMBER 25, 1992

WAKATSUKI, ACTING C.J.,* MOON, AND LEVINSON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED, AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE WATANABE, IN PLACE OF LUM, C.J., RECUSED

---

*Acting Chief Justice Wakatsuki, who heard oral argument in this case, passed away on September 22, 1992. *See* HRS § 602–10 (1985).

## OPINION OF THE COURT BY LEVINSON, J.

The defendant–appellant Philip Nathan Minn (Minn) appeals the August 20, 1991 Findings of Fact, Conclusions of Law, and Judgment entered in favor of the plaintiff–appellee Pauline Anne Brooks (Brooks) on her breach of contract claim against Minn for failure to make divorce property settlement payments, pursuant to a promissory note (the Note). While we disagree with the circuit court's grounds for ruling in favor of Brooks, we conclude for other reasons that the circuit court correctly entered judgment in her favor. Therefore, we affirm in part, vacate in part, and remand the matter to the circuit court for further proceedings consistent with this opinion.

### I.

Minn and Brooks were married on December 27, 1970. There were no children by the marriage. Subsequently, on December 22, 1980, they executed a property settlement agreement

(PSA) entitled "Agreement Incident to and in Contemplation of Divorce." The PSA recited that the "wish and desire" of the parties was "to effect a final and complete settlement of [the parties'] respective property rights, interest, claims and obligations arising out of their marital relationship" and that the PSA would only have "force or effect" if approved by "such court . . . of competent jurisdiction as shall hereafter hear any petition seeking the dissolution of [their] marriage . . . ." Regarding the division of marital property, the PSA provided, *inter alia*, that "[Minn], shall pay to [Brooks] in settlement of [Brooks'] marital claims the sum of Sixty Thousand and No/100 Dollars ($60,000.00) in accordance with the terms of a promissory note [the Note] attached hereto as Exhibit A." [1]

---

[1] The Note, dated January 1, 1981, provided in its entirety:

THE UNDERSIGNED, PHILIP NATHAN MINN, hereby promises to pay to PAULINE ANNE BROOKS, or her order, the principal sum of SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00), together with *interest computed on the unpaid principal balance remaining unpaid from time to time from the date hereof until December 31, 1982 at the rate of four per cent (4%) per annum and thereafter at the rate equal to twelve per cent (12%) per annum until fully paid.*

Principal and interest shall be due and payable as follows:

*Commencing on January 31, 1981 and continuing on or before the last day of each calendar month thereafter until December 31, 1982*, interest shall be paid *in monthly installments* of Two Hundred And No/100 Dollars ($200.00) each.

*Commencing on February 1, 1983 and continuing until the whole of the principal sum shall be fully paid, this note shall be paid in equal monthly installments* of One Thousand Three Hundred Thirty Five and No/100 Dollars ($1,335.00) each.

In the event of default in the payment of *any installment* when due, and in case steps are taken, whether by suit or otherwise, to collect *any installment in arrears*, the undersigned promises to pay all reasonable costs and expenses incurred, including a reasonable attorney's fee and interest at the rate of twelve per cent (12%) per annum on *any installment in arrears*.

(Emphasis added.)

The PSA was approved by the family court and incorporated into a final divorce decree entered on February 9, 1981.[2] Minn's obligation to make installment payments to Brooks, pursuant to the terms of the Note, commenced upon entry of the decree. Minn failed to make any installment payments to Brooks, and on September 28, 1989, Brooks filed a complaint in circuit court against Minn, seeking collection of the amounts due her under the PSA.[3] On June 12, 1990, Brooks moved for summary judgment on her complaint, and by order entered October 5, 1990, the circuit court partially denied the motion.[4] On November 27, 1990,

---

[2] Although neither party designated the divorce decree as part of the record, we take judicial notice of it as part of the record and file in FC–D No. 119149. Hawaii Rules of Evidence (HRE) 201; *see In re Application of Pioneer Mill Co.*, 53 Haw. 496, 497 n.1, 497 P.2d 549, 551 n.1 (1972). Entitled "Decree of Absolute Divorce," it provided in relevant part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
* * *
(2) Other matters covered by this decree are as follows:
* * *
(b) The Agreement Incident To and In Contemplation of Divorce entered into between the parties on December 22, 1980 is hereby approved and incorporated by this reference.

[3] Brooks' complaint contained two counts: Count I sought recovery of the amounts allegedly owed pursuant to the PSA, and Count II sought recovery of amounts allegedly owed under a promissory note executed as part of the marital settlement, but not made a part of the PSA. During oral argument, Brook's counsel explained that, because the second promissory note was executed independent of the divorce decree, he brought suit in circuit court for the "convenience" of consolidating the two claims into one action, rather than suing for collection on one note in circuit court and suing for collection on the other note in family court.

[4] The circuit court entered summary judgment in Brooks' favor as to Count II, but denied her motion as to Count I. On appeal, Minn is not challenging the summary judgment granted as to Count II of the original complaint.

The circuit court denied summary judgment as to Count I of the original complaint on the ground that the PSA, "which is the subject of this litigation, is enforceable through Family Court proceedings . . . ." Although the family court's final divorce decree, into which the PSA was merged, was enforceable in

Brooks filed an amended complaint in which she deleted Count I of the original complaint and added a claim for breach of contract pursuant to the Note executed by Minn on January 1, 1981. In substance, the new count set forth a claim for relief in contract based on the Note independent of the PSA.

On August 20, 1991, following a bench trial conducted on May 17, 1991, the trial court, applying the six–year limitations period contained in Hawaii Revised Statutes (HRS) § 657–1(1) (1985), issued findings of fact (FOFs) and conclusions of law (COLs) upon which it based its judgment that Brooks "is entitled to recover on the unpaid principal balance [of the Note] as of October 1, 1983 . . . to the date paid, together with interest at the rate set forth in the promissory note of twelve percent (12%) per year," plus costs and attorney's fees. Minn timely appealed the judgment.

## II.

On appeal, Minn challenges COL No. 1, which states:

[T]he Court concludes it has jurisdiction over the parties and the subject matter of this action. This is a civil action for default on the payment of amounts due under the

---

family court as a decree–judgment debt, the decree–judgment debt was *also* enforceable in circuit (i.e., civil) court. *See* Section II of this opinion, *infra.* Accordingly, the circuit court erred in denying Brooks' motion for summary judgment as to Count I. The order denying summary judgment as to Count I, however, was interlocutory in nature and non–appealable absent an express direction for entry of a final judgment. *See* Hawaii Rules of Civil Procedure (HRCP) 54(b) (1991). Accordingly, the denial of summary judgment as to Count I did not become ripe for appeal until the trial court's entry of final judgment on August 20, 1991. Brooks' timely appeal from that final judgment is now before us. Because the entry of summary judgment as to Count I of Brooks' original complaint would have obviated the need for the present appeal, and further because the circuit court's erroneous denial of the motion precipitated the filing of Brooks' amended complaint, we treat the circuit court's disposition as plain error. *See* Hawaii Rules of Appellate Procedure (HRAP) 28(b)(6).

terms of a promissory note and is within the jurisdiction of the Court pursuant to Haw. Rev. Stat. § 603–21.5. The Family Court decree and agreement did not require defendant to execute the promissory note. The decree and agreement required that defendant pay the plaintiff $60,000 in accordance with the terms of the promissory note. By executing the promissory note separate and .apart from the agreement, defendant entered into a contract with plaintiff, which contract this court has jurisdiction to enforce.

Minn contends that COL No. 1 is defective because the family court's incorporation of the PSA into the divorce decree merged the PSA into the divorce decree and, therefore, the Note, which was itself incorporated into the PSA by reference, is not enforceable as a contract, but only as part of the divorce decree. Minn further argues that: (1) the family court, pursuant to HRS §§ 571–14 (1985 & Supp. 1991) and 580–1 (1985), has exclusive jurisdiction over all divorce proceedings;[5] (2) HRS § 571–8.5(3) and (6) (1985) provide that the family court can "[m]ake and issue all orders and writs necessary or appropriate in aid of their original jurisdiction" and can "[e]nforce decrees and judgments . . . ;" and (3) therefore the family court had exclusive jurisdiction to enforce collection on the Note, and the circuit court lacked subject matter jurisdiction to do so.

We agree with Minn that the incorporation of the PSA into the divorce decree merged the PSA into the final divorce decree; therefore, the Note no longer has any independent existence and is not enforceable as a contract, but only as an element of the family

---

[5] HRS § 571–14(3) provides in relevant part: "The court shall have exclusive original jurisdiction . . . [i]n all proceedings under chapter 580 . . . ." HRS § 580–1 provides in relevant part: "Exclusive jurisdiction in matters of annulment, divorce, and separation, subject to section 603–37 as to change of venue, and subject also to appeal according to law, is conferred upon the family court . . . ."

court's final judgment. In *Jendrusch v. Jendrusch*, 1 Haw. App. 605, 609, 623 P.2d 893, 896 (1981), the Intermediate Court of Appeals (ICA) stated on analogous facts:

> In our view, the first issue we must decide is whether the PSA merged into the decree. We must decide whether we are dealing with a contract or a judgment. On this issue we apply the rule stated in 24 AM JUR 2D *Divorce and Separation* § 908 (1966).
>
> > Where the language of the agreement shows an intent to make it part of the decree, and the agreement is actually incorporated into the decree, the provisions of the agreement are superseded by and merged into the decree . . . . [Footnote omitted.]
>
> * * *
>
> [T]he PSA lost its independent existence and merged into the decree. Thus we are not concerned with interpreting a contract; we are concerned with interpreting a judgment.

*See also Wellman v. Wellman*, 7 Haw. App. 266, 270–71, 752 P.2d 1079, 1082 (1988); *Joaquin v. Joaquin*, 5 Haw. App. 435, 438, 698 P.2d 298, 301, *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1985). The Note was incorporated into the PSA by reference and was executed by the parties "in settlement of [Brooks'] marital claims," i.e., as part of the property settlement approved by the family court. Furthermore, because the PSA expressly provided that, unless it was approved by the family court, it would "have no further force or effect," the divorce decree gave the Note its legal "life." Accordingly, the Note cannot be enforced as a separate contract, but only as a judgment.

While it is correct that the Note was incorporated, via the PSA, into the divorce decree, we disagree with Minn's contention that only the family court had jurisdiction to enforce the Note as a

decree–judgment. In *Contra Costa County ex rel. Tuazon v. Caro*, 8 Haw. App. 341, 352–53, 802 P.2d 1212, 1217–18, *aff'd*, 72 Haw. 1, 802 P.2d 1202 (1990), decided four months before Brooks filed her amended complaint, the ICA stated:

> A court–ordered child support payment becomes an enforceable decree when the payment becomes due. A due but unpaid court–ordered child support payment (decree arrearage) is enforceable in family court. . . . *Where the family court authorizes payment of a decree arrearage on a deferred payment basis and payment is not made, the deferred payment arrearage then becomes a decree–judgment debt enforceable in both family and civil court.* Where the family court declines to authorize payment of a decree arrearage on a deferred payment basis, the arrearage then becomes a decree–judgment debt enforceable in both family court and civil court.
>
> *The decree–judgment creditor may take a decree–judgment to civil court and have the civil court enforce it in the same manner as the civil court enforces judgments entered by civil courts.*

(Emphasis added.) (Citation omitted.)

While the *Caro* rule was framed in the context of enforcing court–ordered child support payments, we see no meaningful distinction between such payments and court–ordered property settlement payments. If anything, the family court has a more substantial interest in enforcing child support payments because of the family court's "inherent authority to protect and provide for the welfare of children" of divorced parents. *See Blackshear v. Blackshear*, 52 Haw. 480, 482, 478 P.2d 852, 854 (1971). We therefore adopt the *Caro* rule and hold that Brooks, as a decree–judgment creditor, can enforce collection of family court–ordered installment property settlement payments (i.e., deferred payment

arrearages) either through the circuit (i.e., civil) court or the family court.

We emphasize that by allowing Brooks, as a decree–judgment creditor, to enforce collection in circuit court of installment property settlement payments that are neither child–support payments nor alimony, we do not usurp the family court's exclusive jurisdiction over matters that are subject to modification by post–divorce decree. *See* HRS § 580–47 (1985 & Supp. 1991).[6] In this case, the parties had no children and, in accordance with the express terms of the PSA, the divorce decree awarded no alimony to either Brooks or Minn. The parties did not reserve to the family court any

---

[6] HRS § 580–47 (1985 and Supp. 1991) provides in relevant part:

**Support orders; division of property.** (a) *Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of such matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make such further orders as shall appear just and equitable* (1) compelling the parties or either of them to provide for the *support, maintenance, and education of the children* of the parties; (2) compelling either party to provide for the *support and maintenance of the other party*. . . . In establishing the amounts of *child support*, the court shall use the guidelines established under section 576D–7. . . .

In addition to any other relevant factors considered, the court, in ordering *spousal support and maintenance*, shall consider the following factors. . . .

The court may order *support and maintenance to a party* for an indefinite period *or until further order of the court*; . . .

(b) *An order as to the custody, management, and division of property and as to the payment of debts . . . shall be final and conclusive as to both parties subject only to appeals as in civil cases. The court shall at all times*, including during the pendency of any appeal, *have the power to grant any and all orders that may be necessary to protect and provide for the support and maintenance of the parties and any children of the parties . . . and to amend and revise such orders from time to time.*

(c) No order entered under the authority of subsection (a) or entered thereafter revising so much of *such an order as provides for the support, maintenance, and education of the children of the parties* shall impair the

post–decree jurisdiction to modify the PSA,[7] the family court reserved no such jurisdiction in its decree, and the time for appeal-. ing the decree has long since passed. Therefore, no grounds existed for the exercise of exclusive jurisdiction by the family court over the subject matter of Brooks' claim.

Inasmuch as Brooks can seek enforcement of the Note as a decree–judgment in circuit or family court, the circuit court correctly ruled that it had jurisdiction over this case. However, because the circuit court erred in ruling that the Note could be enforced as a discrete contract independent of the final divorce decree, the circuit court applied the wrong statute of limitations (SOL), namely HRS § 657–1 (1985).[8] The SOL that applies to actions seeking enforcement of domestic judgments and decrees is HRS § 657–5 (1985),[9] which provides for a ten–year limitations

---

power of the court . . . to revise its *orders providing for the support, maintenance, and education of the children of the parties.* . . .

    (d) . . . *The court . . . may amend or revise any order . . . determining the amount of the allowance.* . . .

(Emphasis added.) The term "allowance," as employed in HRS ch. 580, is a synonym for spousal or family support. *See, e.g.,* HRS §§ 580–12, 580–13, 580–24 (1985). Thus, by the plain language of HRS § 580–47, the family court only has the power to "amend or revise" (i.e., modify) "support orders" or orders pertaining to "division of property" insofar as they relate to child support or alimony. *See* HRS §§ 580–47(c) and (d) (Supp. 1991). Otherwise, the family court may modify such an order, once it is final, only if "jurisdiction . . . is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists . . . ." *See* HRS §§ 580–47(a) and (b) (1985 and Supp. 1991).

[7] The PSA provides: "No modification, rescission or amendment to this Agreement shall be effective unless in writing signed by the parties hereto."

[8] HRS § 657–1 (1985) provides in relevant part: "The following actions shall be commenced within six years next after the cause of action accrued, and not after: (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, *excepting such as are brought upon the judgment or decree of a court*; . . ." (Emphasis added).

[9] HRS § 657–5 (1985) provides:

period, as opposed to the six–year limitations period set forth in HRS § 657–1. Because the circuit court applied a six–year statute of limitations, it erroneously calculated the interest on the Note to which Brooks was entitled based on a commencement date of October 1, 1983 (i.e., six years prior to the filing of Brooks' initial circuit court complaint), rather than February 9, 1981 (i.e., the date of the family court's final divorce decree).

The applicability of HRS § 657–5 to this case renders moot Minn's remaining arguments on appeal.[10] The family court's final divorce decree was filed on February 9, 1981, and accordingly, Brooks had until February 9, 1991 to toll the governing SOL by filing an enforcement action in either family or circuit court. She filed her original complaint on September 28, 1989 and her amended complaint on November 27, 1990; thus, the SOL was tolled under either complaint. Therefore, Brooks is entitled to recover the entire principal balance of $60,000.00 plus interest as provided in the Note from the date the divorce decree was entered on February 9, 1981 until the circuit court entered judgment in favor of Brooks on August 20, 1991.

### III.

Although the circuit court determined for the wrong reason that it had subject matter jurisdiction over Brooks' claim, we must affirm the judgment if it is correct on any other legal ground. *See,*

---

Every judgment and decree of any court of record of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered, and no action shall be commenced thereon after the expiration of ten years after the judgment or decree was rendered.

[10] Minn urges that he effectively breached the entire Note on January 31, 1981, the date of the first interest payment, and that therefore the SOL should have begun to run from that date. Because in enforcing a judgment, as opposed to a contract, the ten–year SOL runs from the date the judgment was entered and not from the date of any alleged breach of the contract, and because Brooks commenced the present action on September 28, 1989 — less than ten years after the

*e.g.*, ***Shea v. City and County of Honolulu***, 67 Haw. 499, 507, 692 P.2d 1158, 1165 (1985); ***Agsalud v. Lee***, 66 Haw. 425, 430, 664 P.2d 734, 738 (1983). Accordingly, we affirm that part of the circuit court's judgment ruling Minn liable to Brooks pursuant to the Note. However, we vacate the circuit court's calculation of Brooks' damages and remand to the circuit court for further proceedings consistent with this opinion.[11]

*Andrew V. Beaman* (*Trudy M. Burns* with him on the brief; Chun, Kerr, Dodd & Kaneshige), for plaintiff–appellee Pauline A. Brooks.

*Lloyd Y. Asato* for defendant–appellant Philip Nathan Minn.

---

entry of the final divorce decree—, Minn's argument is moot. Minn also contends that the trial court had erred by "relating back" the amended complaint to the time of the original complaint. Because of the applicability of a ten–year SOL, Minn's "relation back" argument is also moot.

[11] The circuit court awarded Brooks $8,641.26 for attorney's fees and costs. In his appeal, Minn did not contest the specifics of this award. Therefore, we affirm it.