**Mary Ann SULLIVAN, formerly known as Mary Ann Quist, Plaintiff and Appellant,**

v.

**Peter A. QUIST, Defendant and Appellee.**

**Civ. No. 920192.**

Supreme Court of North Dakota.

Sept. 14, 1993.

Daniel J. Chapman (argued), Chapman & Chapman, Bismarck, for plaintiff and appellant.

Keith A. Wolberg (argued), Bismarck, for defendant and appellee.

MESCHKE, Justice.

Mary Ann Sullivan appeals from an amended judgment and orders that refused to modify child support, allowed reimbursement for certain college expenses of the parties' children, interpreted the prior divorce decree on division of proceeds from sale of the marital home, and disallowed attorney fees. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Mary Ann and Peter Quist were divorced in 1987 pursuant to a stipulation drafted by Peter, a licensed attorney. The stipulation, wholly incorporated into the divorce decree, has led to numerous disputes between them.

The decree awarded joint legal custody of the parties' children. Two of the minor children were to live with Mary Ann, and one minor child and two adult children were to live with Peter. No child support was awarded to either parent. In the years after the divorce, some of the children apparently moved back and forth between the parents' homes. The only remaining minor child, Mark, has at all times resided with Mary Ann.

A dispute arose over the decree's clauses about payment of the children's college expenses. The stipulation and decree directed that savings bonds accumulated during the marriage for college expenses could only be redeemed by mutual agreement of the parties, and that each party was to contribute to the children's college expenses in proportion to their respective incomes.

The decree designated the sale of the marital home. The home was valued at $150,000, with a $30,000 mortgage. Peter was allowed to live in the house until it was sold. Each party was decreed a $60,000 equity in the house, with Peter to receive any increase in equity when the house was sold. When the house was finally sold in 1992, it brought less than $150,000.

The difficulties caused by the stipulation and divorce decree have resulted in numerous post-trial proceedings involving five different attorneys and three district court judges. The result has been a virtual blizzard of paperwork and a procedural quagmire.[1] It would serve little purpose to discuss at length the various post-trial proceedings. This appeal is from orders and an amended judgment that denied Mary Ann's motion for modification of child support, allowed reimbursement of certain college expenses of the children, ordered an equal division of the proceeds from sale of the marital home, and denied Mary Ann's request for attorney fees.

The following questions are presented:

I.  Did the court err in refusing to order child support for the remaining minor child?

II. Did the court err in allowing reimbursement of certain college expenses paid by Peter and disallowing certain college expenses paid by Mary Ann?

III. Did the court err in ordering that the proceeds of sale of the marital home are to be divided equally?

IV. Did the court err in denying Mary Ann's request for attorney fees?

## I.  CHILD SUPPORT

■ The original divorce decree awarded joint legal custody of the children, with two minor children to reside with Mary Ann, and one minor child and two adult children to reside with Peter. No child support was awarded. Mary Ann later moved for child

---

1. The procedural irregularities continued on appeal. At oral argument, it became apparent that the amended "judgment" appealed from was actually an order for judgment, and no separate judgment had been entered. Upon motion of Mary Ann's counsel we remanded to the trial court, and an amended judgment has been entered. We treat the premature appeal as an appeal from the subsequently entered consistent judgment. *See Perman v. North Dakota Workers Compensation Bureau*, 458 N.W.2d 484, 485 n. 1 (N.D.1990); *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485, 488 (N.D.1987).

support, asserting that she was entitled to support for Mark, the only remaining minor child, who has at all times resided with Mary Ann. The trial court denied the motion, finding no material change in circumstances. On appeal, Mary Ann argues that the court erred in finding no material change of circumstances. However, we must first determine whether it was necessary to show a material change of circumstances before modification was available in this case.

We have on numerous recent occasions expressed our concern over settlements that bargain away a party's right to collect child support on behalf of minor children. *See Reimer v. Reimer*, 502 N.W.2d 231, 233 (N.D.1993); *Rueckert v. Rueckert*, 499 N.W.2d 863, 867–868 (N.D.1993); *State of Minnesota v. Snell*, 493 N.W.2d 656, 657–659 (N.D.1992). As we said in *Reimer v. Reimer*, 502 N.W.2d at 233:

> Using the reasoning in *State of Minnesota v. Snell*, 493 N.W.2d 656, 659 (N.D.1992), we explained:
>
> Although we encourage settlements in divorce actions, "[w]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings."
>
> *Rueckert* at 868. Despite an agreement between the divorcing parents, the best interests of children necessitate that a trial court exercise continuing jurisdiction to modify child support. *Rueckert* at 868. For this predominating policy reason, we held in *Rueckert* that "parental agreements that prohibit or limit the power of a court to modify future child support are invalid."

As our decisions in *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D.1992) and *Sprynczyna-tyk v. Celley*, 486 N.W.2d 230, 232 (N.D. 1992), illustrate, the strong public policy against divorce settlements that bargain away child support is further buttressed by the fact that the right to support belongs to the *child*, and the custodial parent has only a representational right to collect support on behalf of the child.

In light of the strong public policy against divorce settlements that contract away a child's right to support, we conclude that it is unnecessary to show a material change of circumstances as a prerequisite to modification of an original decree that provides no child support. We reverse the decree provisions that provide for no child support, and remand for determination of child support in. accordance with the child support guidelines.

## II. COLLEGE EXPENSES

Mary Ann argues that the trial court erred in allowing reimbursement of certain college expenses paid by Peter and disallowing reimbursement of certain college expenses paid by Mary Ann.

The relevant clause of the original divorce decree says:

> Except as noted hereafter, the plaintiff and the defendant shall be responsible individually for all costs and expenses of any nature whatsoever involving the children residing with him or her. The plaintiff and the defendant also agree that any costs and expenses incurred in educating any of their children beyond the secondary school level will be shared by them in proportion to their respective incomes. The plaintiff and the defendant have accumulated U.S. Government Series E and EE bonds over a period of years to provide for the post-secondary education of their children. The plaintiff and the defendant will each be provided with a list of the bonds and must mutually agree before any of them may be redeemed.

At the request of the parties, Judge Hatch in 1990 clarified this part of the judgment, interpreting it to require the parties to pay for "[t]uition, books, fees, and the average cost of room and board, all predicated on costs of attending a college in North Dakota or a comparably priced institution located out of state."

Disputes continued after this clarification, and finally the parties again required inter-

vention by the court to resolve the matter. The parties submitted affidavits delineating the various college expenses each had incurred on behalf of the children. Judge Jorgensen allowed reimbursement of those expenses that fell within Judge Hatch's interpretation of the judgment, *i.e.,* tuition, books, fees, and room and board, and disallowed the rest. As a result, Mary Ann was allowed reimbursement out of the bonds in the amount of $8,500.58; Peter was allowed reimbursement of $5,464.38. The court further ordered that in the future the parties must provide an accounting to the clerk of court when seeking reimbursement for college expenses.

Mary Ann's argument is essentially twofold. First, she asserts that the court erroneously restricted reimbursable expenses to tuition, books, fees, and room and board; second, she asserts that the court treated the parties' requests disparately, allowing certain of Peter's requests but disallowing certain of hers.

■ As we discuss more thoroughly later, interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished. *Henry S. Grinde Corp. v. Klindworth,* 77 N.D. 597, 44 N.W.2d 417, 427–428 (1950). However, if the judgment is vague, uncertain, or ambiguous, the court may clarify the judgment. *See Wastvedt v. Wastvedt,* 371 N.W.2d 142, 144 (N.D.1985). In this case, the judgment was vague and uncertain about what was included within "costs and expenses incurred in educating" the children "beyond the secondary school level." The trial court's ruling that this clause covered college tuition, books, fees, and room and board merely clarified the ambiguous judgment.

Mary Ann also contends that the court applied this interpretation in a disparate manner, disallowing many of her requested items while allowing most of Peter's. A review of those requests, however, demonstrates that the court even-handedly allowed expenses when they constituted "tuition, books, fees, and room and board," and disallowed them when they did not. For example, some of Mary Ann's claimed expenses

which were disallowed included car registration fees and insurance; medical expenses; clothes for an interview; "school supplies and living expenses"; groceries for weekends; donations to a church; cost of a resume; and a deposit on an apartment for one of the children after graduation. Peter's similar requests were also denied, as were requests for reimbursement for typewriters he purchased for two of the children. We see no great disparity in the court's allowance of reimbursement for college expenses.

Much of Mary Ann's argument centers upon the more general nature of Peter's affidavit seeking reimbursement, in contrast to her detailed, check-by-check listing of each claimed item. This raises a question of sufficiency of proof, which is a question of fact for the trial court. The trial court's determinations on fact questions will not be overturned on appeal unless they are clearly erroneous. N.D.R.Civ.P. 52(a). We have reviewed the court's findings on this issue, and they are not clearly erroneous.

■ However, one aspect of the court's ruling on college expenses is troublesome. Mary Ann asserts that the court erred in allowing a $2,500 reimbursement to Peter. This represents a $2,500 payment from Peter to Mary Ann for college expenses she had incurred on behalf of the children.

In ruling on the parties' requests for reimbursement, the court initially stated that Peter was not requesting reimbursement for college expenses. Peter had indeed sought such reimbursement, and he moved for reconsideration. The trial court then awarded Peter reimbursement out of the bonds, including the disputed $2,500.

In her response to Peter's motion for reconsideration, Mary Ann stated that "she acknowledges that she received $2,500.00 from [Peter] and agrees that that should be used in reducing the amount to which she is entitled." The court did not, however, reduce Mary Ann's reimbursement, but ordered $2,500 reimbursement to Peter. This suggests the possibility that the $2,500 college expenses covered by Peter's check may have been included in the $8,500 reimbursement ordered to Mary Ann, raising the fur-

ther possibility that she has been reimbursed twice for the same expenses.

Mary Ann implies that the $2,500 she received from Peter may in fact have come from proceeds from bonds improperly cashed by Peter. This argument raises the possibility that Peter has been paid twice for the same expenses.

Unfortunately, the trial court's ruling does not address this problem, but in conclusory fashion allows reimbursement of the $2,500 without further explanation. On this record, we are unable to unravel the mystery of the $2,500 payment. We therefore direct the trial court upon remand to reconsider the reimbursement to Peter of the $2,500 payment from Peter to Mary Ann.[2]

## III. HOUSE PROCEEDS

Mary Ann argues that the district court erred in ordering that the proceeds from sale of the house be divided equally. She argues that the judgment decreed her a constant $60,000 equity interest in the house, and that she should not receive less because the house sold for less than $150,000. Peter argues that it was his intent in drafting the settlement agreement that Mary Ann's equity interest would remain constant only if the house appreciated in value, and that the parties never contemplated the house selling for less when they agreed to the settlement.

■ The parties have presented this question as one involving the interpretation of the parties' settlement agreement. Peter particularly relies upon his own testimony regarding his intent when drafting the stipulation. The majority view, however, is that a settlement agreement that is wholly incorporated into the divorce judgment is merged into that judgment and ceases to be independently viable or enforceable. *See Kaleta v. Kaleta,* 452 So.2d 1338, 1339 (Ala.Ct.Civ.App.1984);

*Kulchar v. Kulchar,* 1 Cal.3d 467, 462 P.2d 17, 19, 82 Cal.Rptr. 489, 491 (1969); *Estate of Gibson,* 219 Cal.App.3d 1486, 269 Cal.Rptr. 48, 49–51 (1990); *Pannell v. Pannell,* 162 Ga.App. 96, 290 S.E.2d 184, 185 (1982); *Brooks v. Minn,* 73 Haw. 566, 836 P.2d 1081, 1084–1085 (1992); *In re Marriage of Lawson,* 409 N.W.2d 181, 182 (Iowa 1987); *In re Marriage of Bries,* 499 N.W.2d 319, 321 (Iowa Ct.App.1993); *Peterson v. Leonard,* 622 A.2d 87, 89 (Me.1993); *Marks v. Marks,* 316 N.C. 447, 342 S.E.2d 859, 863 (1986); *Isenhower v. Isenhower,* 666 P.2d 238, 241 (Okla.Ct.App.1983); *Henningsen v. Crandall,* 112 Or.App. 466, 828 P.2d 1055, 1057 (1992); *Vanatta v. Vanatta,* 701 S.W.2d 824, 827 (Tenn.Ct.App.1985). *See also* 24 Am.Jur.2d *Divorce and Separation* § 841 (1983); Restatement (Second) of Judgments § 18 (1982). Once the settlement agreement is merged into the divorce decree, it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties. *E.g., In re Marriage of Bries,* 499 N.W.2d at 321. We agree with the result and rationale of these cases, and we adopt the merger doctrine in this case.

We note that this court has previously applied the underlying principles of the merger doctrine, although not describing it that way. In *Harchenko v. Harchenko,* 77 N.D. 289, 43 N.W.2d 200 (1950), a plaintiff sued her ex-husband for fraud and deceit for misrepresentations made in the parties' stipulated divorce settlement. The provisions of the settlement were incorporated into the final divorce decree. The court concluded that the suit for fraud on the contract was an impermissible collateral attack on the judgment:

"The stipulation was an agreement which was to be submitted to the court for his advice and guidance in exercising the pow-

---

2. Mary Ann also seeks an interpretation of the provision in the original judgment requiring that the parties pay college expenses "in proportion to their respective incomes." Judge Jorgensen interpreted the judgment to require exhaustion of the bonds before that provision becomes applicable. We agree.

The current amended judgment requires that the parties be reimbursed for college expenses out of the bonds, upon filing an accounting with

the clerk of court. Only after the bonds are expended will the parties be required to contribute to college expenses in proportion to their respective incomes. At this point, we do not know if or when that contingency will arise, and any opinion on that question would be purely advisory. We do not issue advisory opinions. *Bulman v. Hulstrand Construction Co.,* 503 N.W.2d 240, 241 (N.D.1993); *Municipal Services Corp. v. Kusler,* 490 N.W.2d 700, 706 (N.D.1992).

ers vested in him under the statute. The decree lost none of its effectiveness because the court accepted in toto the provisions of the stipulation instead of modifying them as he unquestionably had a right to do." *Karteus v. Karteus,* 67 N.D. 297, 301, 272 N.W. 185, 187. It follows that a decree settling the property rights of the parties to a divorce action and granting alimony is an adjudication of what constitutes a just and proper distribution of the property of the parties, whether the decree be made pursuant to a stipulation or upon a consideration of, and findings made, upon other evidence in the case. . . .

Since the trial court had jurisdiction of the parties and of the subject matter of the divorce action, its judgment imports absolute verity and as long as this judgment stands it may not be attacked collaterally by any of the parties thereto, or by those in privity with them. . . .

*Harchenko,* 43 N.W.2d at 201 (citations omitted). Although the court labeled its rationale as collateral attack, the underlying principles are the same as those for merger. Once judgment is entered incorporating the settlement agreement, the parties' rights are governed solely by the judgment, and any further action must be on the judgment, not on the contract.

■ Because Mary Ann and Peter's stipulated settlement was incorporated verbatim into the divorce judgment, it was wholly merged into that judgment. Accordingly, "we are not concerned with interpreting a contract; we are concerned with interpreting a judgment." *Brooks v. Minn,* 836 P.2d at 1085 (quoting *Jendrusch v. Jendrusch,* 1 Haw.App. 605, 623 P.2d 893, 896 (1981)). As this court held in *Zent v. Zent,* 281 N.W.2d 41, 46 (N.D.1979), interpretation of a judgment is a question of law that is fully reviewable by this court on appeal.

■ The relevant clauses of the divorce judgment say:

The plaintiff [Mary Ann] and the defendant [Peter] agree that the value of their residence and property at 1728 Country West Road is One Hundred Fifty Thousand dollars ($150,000.00). . . . There is a mortgage loan with an outstanding balance of approximately Thirty Thousand dollars ($30,000.00) against the property. The plaintiff and the defendant agree that the net equity in the residence and property shall be determined to be One Hundred Twenty Thousand dollars ($120,000.00) and that each of them shall be entitled to one-half of that amount, or Sixty Thousand dollars ($60,000.00). . . . In the event that a decision is made to sell the residence, the defendant and the plaintiff shall share the costs of selling. *The plaintiff's Sixty Thousand dollars ($60,000.00) equity interest* shall not appreciate or increase in value, but *shall remain constant in value.* In the event of a sale of the residence and property, the plaintiff's Sixty Thousand dollars ($60,000.00) equity interest shall bear such proportion of the reasonable and necessary costs of sale, including but not limited to a real estate commission, as the said Sixty Thousand Dollars ($60,000.00) bears to the sales price. By way of example only, if the sales price is $150,000.00 and the sales costs $9,000.00, the plaintiff's equity interest shall bear one-half, or $4,500.00, thereof if the defendant's equity interest has not appreciated in value since the date of the final divorce decree. If, however, the defendant's equity interest, which is also valued at $60,000.00 *as of the date of the final divorce decree,* has appreciated in value by the time of the sale, then the defendant shall pay a larger pro rata share of such expenses based upon the increase in the defendant's equity interest.

[Emphasis added].

Peter argues that the judgment does not spell out division of the proceeds in the event the house sold for less than $150,000, and therefore argues that the trial court properly clarified the judgment by holding that proceeds were to be split equally. Mary Ann argues that the judgment clearly and unambiguously decrees that Mary Ann's $60,000 equity interest was to be constant in value but Peter's could fluctuate, so the court's order for an equal split of the proceeds was an improper modification of the property distribution. *See Wastvedt v. Wastvedt,* 371 N.W.2d 142, 144 (N.D.1985) (property division may be clarified, but not modified).

Two trial court judges have interpreted this judgment to allow an equal split of the sale proceeds.[3]

The general guidelines for interpretation of judgments were explained in *Henry S. Grinde Corp. v. Klindworth*, 77 N.D. 597, 44 N.W.2d 417, 427–428 (1950) (On Petition for Rehearing):

> "The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." 49 C.J.S., Judgments, § 436, pp. 862 and 863; *Hofer v. Hofer*, Ohio App., [35 Ohio Law Abs. 486], 42 N.E.2d 165, 166. The judgment "should be so construed as to give effect to each and every part of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation." *Lamb v. Major & Loomis Co.*, 146 N.C. 531, 60 S.E. 425, 426; ... "A judgment, plain and unambiguous in its terms, may not be modified, enlarged, restricted, or diminished by reference to the" Findings of Fact. 49 C.J.S., Judgments, § 436, p. 868.

*See also Zent v. Zent,* 281 N.W.2d at 46. These guidelines apply here.

We construe the judgment to clearly and unambiguously provide that Mary Ann was entitled to $60,000 equity in the house, even if its value declined. The construction urged by Peter and adopted by the trial court does not give effect to each and every part of the judgment, as required by *Klindworth,* but rather renders ineffective the clear directive that Mary Ann's $60,000 "shall remain constant in value." The first part of that sentence provides that Mary Ann's interest "shall not appreciate or increase in value." If the phrase "shall remain constant in value" refers as well to only increases in valuation, it is mere surplusage. To give effect to each and every part of the judgment, that phrase must be interpreted to mean exactly what it says: Mary Ann is entitled to a *constant* $60,000 equity interest, notwithstanding fluctuations in the property's value.

Further support for this interpretation is found in the part of the judgment that says Mary Ann's "Sixty Thousand dollars ($60,000.00) equity interest shall bear such proportion of the reasonable and necessary costs of sale ... as the said Sixty Thousand Dollars ($60,000.00) bears to the sales price." The trial court's interpretation, requiring an equal split of the sale proceeds and equal sharing of the costs of sale, deletes this

---

**3.** The unusual procedural chronology of this case raised jurisdictional questions at oral argument. Judge Hatch presided over the original divorce action in 1987. After a show cause hearing, Judge Hatch issued a memorandum opinion on May 1, 1990, interpreting the 1987 judgment to provide for an equal split of the proceeds if the house sold for less than $150,000. Mary Ann filed a motion for reconsideration of that ruling, which remained pending when Judge Hatch left the bench. Judge Hodny was then assigned to the case and determined that he could not decide the motion for reconsideration without an evidentiary hearing. He therefore purported to deny the motion, but invited the parties to file a new motion with a request for a hearing. Mary Ann immediately filed such a motion, but Judge Hodny recused himself before ruling on it. Judge Jorgensen was then assigned, and on March 3, 1992, issued an order for an amended judgment determining that the house proceeds were to be split equally.

Questions were raised at oral argument about our jurisdiction because of the lengthy delay between Judge Hatch's May 1, 1990 decision and the notice of appeal. It is clear that Mary Ann did not attempt to appeal from Judge Hatch's 1990 decision, but has appealed from Judge Jorgensen's 1992 order for amended judgment and the subsequently entered amended judgment, as well as various other interim orders entered by Judge Jorgensen. *See* Footnote 1. The appeal was timely and conferred jurisdiction upon this court.

The real question presented by this procedural anomaly is whether Judge Hatch's 1990 decision became res judicata on the issue of division of the sale proceeds. Our review of the record indicates that Mary Ann filed a timely motion for reconsideration of Judge Hatch's ruling, and there was not a final disposition of the issue until entry of the amended judgment on Judge Jorgensen's 1992 order. Accordingly, Judge Hatch's ruling did not become final and was not res judicata, and we can properly review Judge Jorgensen's decision on this appeal.

sentence from the judgment. The trial court, in effect, rewrote the judgment to fit Peter's testimony about his intent in drafting the settlement agreement.

The clear import of the judgment language is that Mary Ann's interest was to remain "constant," while Peter's interest was subject to fluctuation with the value of the property. The trial court's contrary ruling constituted an improper modification of clear and unambiguous provisions in the judgment. *See Wastvedt v. Wastvedt,* 371 N.W.2d at 144; *Henry S. Grinde Corp. v. Klindworth,* 44 N.W.2d at 428. We hold that Mary Ann is entitled to $60,000, less her prorated share of sale costs, from the proceeds from sale of the house.

## IV. ATTORNEY FEES

The trial court denied Mary Ann's request for attorney fees incurred in the proceedings below, and also denied her separate request for attorney fees to prosecute this appeal.

The trial court has authority to award attorney fees in a divorce case for proceedings in the trial court and upon appeal. NDCC 14–05–23; *Lucy v. Lucy,* 456 N.W.2d 539, 544 (N.D.1990); *Routledge v. Routledge,* 377 N.W.2d 542, 549 n. 7 (N.D. 1985). The court is to consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case. *Lucy v. Lucy,* 456 N.W.2d at 544. In this case, the financial circumstances of the parties have been significantly changed by the results on appeal. Furthermore, Peter's position on interpreting the judgment that incorporated the stipulation that he prepared undoubtedly increased the time and effort spent on this case. *See Lucy v. Lucy,* 456 N.W.2d at 544. Although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, we prefer that the trial court make the initial determination. *See McIntee v. McIntee,* 413 N.W.2d 366, 367 (N.D.1987). Accordingly, we remand to the trial court for a determination of a reasonable award of attorney fees to Mary Ann.

We have considered the remaining arguments made by the parties and conclude that they are without merit. We reverse the denial of child support and remand for application of the child support guidelines; we reverse that part of the amended judgment ordering an equal division of the proceeds of the house and remand for further proceedings consistent with this opinion; we direct that the court reconsider reimbursement of the $2,500 payment for college expenses; and we direct that the court upon remand determine a reasonable award of attorney fees to Mary Ann. In all other respects, the judgment and orders appealed from are affirmed. Costs on appeal are awarded to Mary Ann.

LEVINE, Acting C.J., NEUMANN, J., KIRK SMITH, District Judge and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, and KIRK SMITH, District Judge, sitting in place of VANDE WALLE, C.J., and SANDSTROM, J., disqualified.