1997 ND 64

**Sharon and Louis LINDERKAMP, Plaintiffs and Appellees,**

v.

**Ray and Gertha HOFFMAN, Defendants and Appellants.**

Civil No. 960174.

Supreme Court of North Dakota.

April 22, 1997.

Robert J. Snyder (argued), of Snyder Coles Lawyers, Bismarck, for plaintiffs and appellees.

Michael Geiermann (argued), of Rolfson Schulz Lervick & Geiermann Law Offices, P.C., Bismarck, for defendants and appellants.

MARING, Justice.

[¶1] Ray and Gertha Hoffman have appealed a judgment requiring them to convey real property to Sharon and Louis Linderkamp. We conclude that the parties' underlying agreement is not specifically enforceable and we reverse the judgment.

[¶2] To sell an apartment building they owned, Hoffmans listed it with a real estate agent who placed it on the Multiple Listing Service. Through Donna Haas, another real estate agent, Linderkamps submitted a written offer of $87,500, to be paid as follows:

Buyer to obtain loan in the amount of $63,500 from lending institution of their choice. Seller to carry $24,000 at 8.69% interest amortized over 30 years to balloon in 5 years. Seller may pay off Contract early without penalty.

The offer specified that the property was to be conveyed by warranty deed, with closing to occur on or before April 15, 1993. Hoffmans executed their acceptance of the offer on March 25, 1993. Hoffmans did not attend the closing scheduled for April 15, 1993, and refused to convey the property.

[¶ 3] Linderkamps sued Hoffmans for specific performance of the parties' purchase agreement. Ray Hoffman asserted that he intended to have a first mortgage on the property for $24,000 and that his would be the only lien on the property. The trial court found Hoffmans' "reservation about financing was not expressed prior to the parties agreeing, in writing, to the terms of the sale." The trial court found Hoffmans had "unjustifiably refused to convey the property" and ordered specific performance of the purchase agreement. The judgment entered required Hoffmans to immediately convey the property to Linderkamps. Hoffmans appealed.

[¶ 4] The remedy of specific enforcement of an agreement is limited by §§ 32–04–12 and 32–04–13, N.D.C.C.[1] Section 32–04–12, N.D.C.C., provides, in part:

*32–04–12. What obligations cannot be enforced specifically.* The following obligations cannot be enforced specifically:

\* \* \*

5. An agreement, the terms of which are not sufficiently certain to make the precise act that is to be done clearly ascertainable.

Section 32–04–13, N.D.C.C., provides, in part:

*32–04–13. When specific performance cannot be enforced against one.* Specific performance cannot be enforced against a party to a contract in any of the following cases:

1. If the party has not received an adequate consideration for the contract.

2. If it is not as to that party just and reasonable.

[¶ 5] Specific performance rests in the sound discretion of the trial court, *Beebe v. Hanson,* 40 N.D. 559, 169 N.W. 31, 32 (1918), "and we will not interfere with that discretion unless we are shown that it was abused." *Wolf v. Anderson,* 334 N.W.2d 212, 215 (N.D.1983). "The person seeking specific performance has the burden of proving he is entitled to it." *Id.* at 215. A party seeking specific performance of a contract "is held to a higher standard than if he merely asks for money damages for breach of the contract." *Sand v. Red River Nat'l Bank & Trust Co.,* 224 N.W.2d 375, 378 (N.D.1974). Specific performance is an equitable remedy, and equitable principles must be followed in its use. *Wolf,* 334 N.W.2d at 215. Specific performance may be denied if a contract is not fair, reasonable, and based on adequate consideration. *Sand,* 224 N.W.2d at 378. "And specific performance of an agreement must be denied when its terms are not sufficiently certain to make the precise act which is to be done clearly ascertainable." *Beebe,* 169 N.W. at 32. To be specifically enforceable, " '[a] contract must fix the price or consideration clearly, definitely, certainly, and unambiguously, or provide a way by which it can be fixed with certainty.' " *Mandan–Bismarck Livestock Auction v. Kist,* 84 N.W.2d 297, 301 (N.D.1957) (quoting 81 C.J.S., *Specific Performance* § 34). To be specifically enforceable, a contract " 'must be complete in itself . . . at least with respect to its essential and material terms . . . The court cannot supply an important omission or

1. Sections 32–04–12 and 32–04–13, N.D.C.C., were originally enacted as §§ 1893 and 1894 of the Civil Code of the Territory of Dakota (1865). They were derived from §§ 1893 and 1894 of the Field Code, "which, although not adopted by New York for which it was proposed in 1865, was adopted by Dakota Territory in 1865 and by California in 1872." *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473, 476 n. 4 (N.D.1986).

California enacted §§ 1893 and 1894 of the Field Code as §§ 3390 and 3391 of the California Civil Code. "Because of this common derivation, California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.' " *Glatt,* 383 N.W.2d at 477 n. 4, *quoting Becker v. Becker,* 262 N.W.2d 478, 483 (N.D.1978).

complete a defective contract for the purpose of specific performance.'" *Id.* at 302 (quoting 81 C.J.S., *Specific Performance* § 35).

[¶ 6] Sharon Linderkamp testified: (1) "That the property would be used as collateral for the loan;" (2) The bank was "always" to be in "a first position;" (3) Hoffman "was going to hold a second mortgage" for his $24,000; (4) "I knew the bank was going to be in first position because they carried the sixty-three, five" and (5) The bank required that it "be in a first position" or it would not lend the money. Thus, she contended the financing provisions in the offer contained in the purchase agreement signed by the parties subordinated Hoffmans' interest to that of the lender providing the $63,500 to be paid to Hoffmans.

[¶ 7] "It is widely recognized that a subordination agreement is unfavorable to the seller and can greatly increase the risk the seller incurs in the transaction." *Stenehjem v. Kyn Jin Cho*, 631 P.2d 482, 488 (Alaska 1981). When a seller subordinates his interest to a lender, the terms of the first mortgage to the lender become important elements of the seller's contract with the buyer. A limit on the interest rate, for example, "limits the risk which the seller undertakes in subordination since it may prevent commencement of a construction project with an unsuitably high risk of failure. The interest rate also affects the size of the payments on the loan, which may affect the seller's ability to take over the project." *Id.* at 493.

[¶ 8] Courts have frequently denied specific performance of land contracts with subordination clauses containing indefinite terms. Anno., *Specific Performance: Requisite Definiteness of Provision in Contract for Sale or Lease of Land, That Vendor or Landlord Will Subordinate His Interest to Permit Other Party to Obtain Financing*, 26 A.L.R.3d 855 (1969).

The clearest cases for the denial of specific performance of a land contract because of the indefiniteness of the terms of a provision by which the vendor or lessor agrees to subordinate his interests to a lien to be created by the purchaser or lessee are those in which there is no provision at all made as to the nature, amount, or other terms of the prior lien to be subsequently created.

Anno., 26 A.L.R.3d at 860.

Later California cases ... have ... held that the subordination arrangements must be stated with sufficient definiteness and clarity to afford some reasonable protection to the vendor's interests and not leave his security altogether subject to the purchaser-developer's discretion, the determinative question being whether the contract is, as to the defendant, sufficiently "just and reasonable" to merit enforcement.

Anno., 26 A.L.R.3d at 865.

The courts rejecting the claim of indefiniteness have tended ... to be satisfied with contract terms which have fixed at least the maximum limits of the obligation to which the seller's interest was to be subordinated and the most important terms as to interest and terms of the loan, or at least made some provision for fixing such loan terms other than by future agreement of the buyer and seller.

Anno., 26 A.L.R.3d at 868.

[¶ 9] In *Magna Devel. Co. v. Reed*, 228 Cal.App.2d 230, 39 Cal.Rptr. 284, 289 (1964), the appellate court upheld the trial court's determination that specific enforcement was not available for a contract that was uncertain and indefinite because it contained a subordination provision that "does not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when it would become due, nor the rate of interest it would bear, nor the terms or conditions of the first deed of trust to secure such loan." As Chief Justice Traynor explained in *Handy v. Gordon*, 65 Cal.2d 578, 55 Cal.Rptr. 769, 770–71, 422 P.2d 329, 330–31 (1967):

[A]n enforceable subordination clause must contain terms that will define and minimize the risk that the subordinating liens will impair or destroy the seller's security. (Citations omitted.) ... Without some such terms ... the seller is forced to rely entirely on the buyer's good faith and ability as a developer to insure that he will not lose both his land and the purchase price.... The personal liability alone of

the vendee would not constitute sufficient protection to the vendor to permit specific performance. (Citations omitted.)

In affirming the trial court's determination that the subordination clause lacked essential terms and was too uncertain to be enforced, the court further explained:

Thus, the contract leaves defendants with nothing but plaintiff's good faith and business judgment to insure them that they will ever receive anything for conveying their land. Such a contract is not as to them "just and reasonable" within the meaning of Civil Code, section 3391.

55 Cal.Rptr. at 771–72, 422 P.2d at 331–32.

[¶ 10] The subordination clause in the parties' agreement does not specify the interest rate or term of the loan Linderkamps were to receive. It does not spell out any default provisions. Thus, it lacks terms important to Hoffmans. Under the parties' agreement, Linderkamps were getting the property with nothing down and Hoffmans were bearing all the risk of loss if Linderkamps agreed to onerous loan terms and were unable to meet the obligation, or if Linderkamps defaulted due to a downturn in the market.

[¶ 11] The subordination agreement is not "stated with sufficient definiteness and clarity to afford some reasonable protection to the [Hoffmans'] interest," Anno., 26 A.L.R.3d at 865, does not fix "important terms as to interest and terms of the loan," Anno., 26 A.L.R.3d at 868, and does not "define and minimize the risk that the subordinating lien[ ] will impair or destroy the seller's security," *Handy v. Gordon*, 55 Cal.Rptr. at 770–71, 422 P.2d at 330–31. Under the purchase agreement, Hoffmans are "forced to rely entirely on the buyer's good faith and ability as a developer to insure that [they] will not lose both [their] land and the purchase price." *Id.* at 771, 422 P.2d at 331. The contract gives Hoffmans only Linderkamps' "good faith and business judgment," *id.*, to protect them against loss.

[¶ 12] We conclude that the purchase agreement executed by Hoffmans and Linderkamps is "not sufficiently certain to make the precise act that is to be done clearly ascertainable," § 32–04–12(5), N.D.C.C., and is not, as to Hoffmans, "just and reasonable,"

§ 32–04–13(2), N.D.C.C. Linderkamps are, therefore, not entitled to court-ordered specific performance of the purchase agreement.

[¶ 13] The judgment is reversed.

[¶ 14] SANDSTROM, Acting C.J., NEUMANN and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 15] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.

