1999 ND 114

**William KUNTZ and Jeff Kuntz, Plaintiffs and Appellees,**

v.

**John KUNTZ, as Personal Representative of the estate of George Kuntz, deceased, Defendant and Appellant.**

No. 980286.

Supreme Court of North Dakota.

June 18, 1999.

---

Michael S. McIntee, McIntee Law Firm, Towner, for plaintiffs and appellees.

J. Philip Johnson, Wold Johnson, P.C., Fargo, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Nephews sued their uncle to compel specific performance of an oral agreement for sale of the uncle's farmland and other farm assets. After the uncle died, the trial court ruled for the nephews. The personal representative of the uncle's estate appealed. We affirm, concluding the trial court did not err when it held the oral agreement was valid, specifically enforceable, and not the result of undue influence.

## I

[¶ 2] Brothers George and Bert Kuntz farmed and ranched near Towner. They separately owned land and cattle, but owned machinery together, and operated together, sharing income and expenses. Although George Kuntz never married or had children, Bert Kuntz married and had eight children. Bert Kuntz and his children routinely helped George Kuntz with farm and ranch work.

[¶ 3] In June 1997, George Kuntz was diagnosed with terminal cancer and began discussing the sale of his farming assets. Bert Kuntz's sons, William (Bill) and Jeff Kuntz, ("nephews") offered, in writing, to purchase George Kuntz's land, cattle, and machinery. George Kuntz countered with a $5,000 increase in the price of the machinery. The nephews presented a revised written offer, which George Kuntz orally accepted. No written agreement was executed.

[¶ 4] After George Kuntz's sister, Bernice Huber, began caring for him, she told the nephews she was canceling the sale. The nephews sued to complete the sale. When George Kuntz died, John Kuntz, Personal Representative of George Kuntz Estate was substituted as the defendant for trial.

[¶ 5] The trial court found:

4. George gave Bill Kuntz [a nephew] a verbal agreement to the terms of the modified Purchase Agreement Proposal.

5. On June 21, 199[7], the parties met at the office of their tax consultant. At that time, the tax consultant advised that the terms were acceptable, but that the depreciation schedule for the personal property would have to be limited to approximately 7 years. He further indicated that the amount of the purchase price, the interest rate and the amount of the yearly payments was acceptable, but that the purchase price would have to be first applied to the purchase of the chattel property. After discussion, George Kuntz agreed to the terms of the Proposal as well as the suggested payment application by the tax consultant.

6. George Kuntz then began to have documents prepared to complete the sale, including the updating of abstracts.

7. Based upon George Kuntz's verbal agreement, [his nephews] rented additional pasture land for the cattle and began to operate the farm/ranch as if the purchase agreements had been executed.

8. Shortly thereafter, George Kuntz informed other non-family members that he had sold his farm to the Plaintiffs and that he had given them a good deal since he could not take it with him and knew he was selling it for less than market price to make sure that the Plaintiff could make it.

9. Attorney William Hartl had prepared the purchase agreements according to the Proposal, and had obtained George's signature. Before signing, Hartl discovered that he had forgotten to include a small parcel of land and needed to revise the documents.

. . . .

11. Since the dates of June 15–16, 199[7], up to George's death, [his nephews] operated George's farm without any input or direction from him.

[¶ 6] The trial court concluded George Kuntz and his nephews entered into a "verbal agreement" for the sale of George Kuntz's farm assets; the agreement was binding because the nephews "partially performed on the oral contract substantially to their detriment;" and "[t]he oral agreement as outline[d] on Plaintiff's Exhibit Number 1 and as further modified for the shorter payments schedules on the property other than the land, is valid and enforceable." The trial court ordered the personal representative to complete the sale. The personal representative appealed, contending the trial court erred in finding there was an oral agreement for the sale of George Kuntz's farming assets, or, if there was a contract, the court erred in not finding undue influence affecting George Kuntz's actions.

II

[¶ 7] A contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02. Parties' consent must be free, mutual, and communicated to each other. N.D.C.C. § 9–03–01. A flexible test of acceptance and mutual consent is appropriate when there is possession of property and partial performance. *Stonewood Hotel Corp., Inc. v. Seven Seas, Inc.*, 452 N.W.2d 94, 95 (N.D. 1990). "Intent and the existence of an oral contract are questions of fact." *Ehrman v. Feist*, 1997 ND 180, ¶ 12, 568 N.W.2d 747.

[¶ 8] The personal representative, relying on *Bjornson v. Five Star Mfg. Co.*, 61 N.W.2d 913 (N.D.1953), argues "[i]f the parties intended to have a final written agreement, oral agreements are irrelevant." *Bjornson*, however, is limited to parties not intending to be bound until executing a written contract:

We think the letters of the plaintiff's attorney and of defendant's president affirmatively demonstrate that the negotiators intended that neither party should be bound until the final contract was executed. Since negotiations were abandoned before that contract was executed, there was no contract which can be made the basis of a cause of action.

*Bjornson*, 61 N.W.2d at 916.

[¶ 9] Here, the trial court found an oral agreement. Ample evidence supports the finding George Kuntz orally agreed to the sale of his farm assets on terms proposed by his nephews, as modified by changes suggested by the tax consultant employed by the three parties to the agreement. The trial court's finding, "George gave [his nephew] Bill Kuntz a verbal agreement to the terms of the modified Purchase Agreement Proposal," is not clearly erroneous.

III

[¶ 10] The trial court found part performance warranting enforcement of

the parties' oral agreement. An agreement for the sale of real property, or "for the lending of money or the extension of credit in an aggregate amount of twenty-five thousand dollars or greater" is "invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent." N.D.C.C. § 9–06–04. An oral contract, however, may be taken out of the statute of frauds by part performance. *Ehrman v. Feist*, 1997 ND 180, ¶ 12, 568 N.W.2d 747. "Part performance consistent only with the existence of an oral contract removes the contract from the statute of frauds." *Wachter Dev., L.L.C. v. Gomke*, 544 N.W.2d 127, 132 (N.D.1996).

[¶ 11] Bert Kuntz testified George Kuntz did not "do any farming-ranching" after learning he had cancer. Violet Kuntz, Bert Kuntz's wife, testified she did not "ever see anyone other than [her] immediate family do any work on the George Kuntz farm after this June 21st meeting with Mr. Steinke." One of the nephews, Jeff Kuntz, testified he "took out a loan because I needed to get some pasture rented" after George Kuntz accepted the purchase offer. He testified he presented the purchase proposal to his lender to show he needed more land, and after receiving the loan he rented the additional land from Harry Anderson for $6,800. He also testified that, since mid-June 1997, "[w]e have started taking over the payments, such as medicine for the cattle, making sure the cattle get to and from pasture, whatever wasn't treated for, castration of cattle, and just pretty much maintain the farm and ranch life."

[¶ 12] The other nephew, William Kuntz, testified he owned 1,300 acres of pasture which, before May or June 1997, he had been renting to his father and George Kuntz. He testified Attorney William Hartl had said "everything was prepared and done and that George had signed it," but he would have to add an.80–acre tract he had forgotten, and "as soon as he had that, he would have George sign the one

prepared correctly and then we could sign it." He testified they "would give the down payment when the title opinions were prepared." He further testified that after George Kuntz told William Kuntz's mother where the abstracts were, she gave them to William Kuntz, who brought them to the abstractor's office. The estate paid the abstractor's bill. He testified that since the sale of the property in June 1997, the estate has not paid any expenses or "done anything that would be consistent with George or his estate operating the farm."

[¶ 13] This evidence supports the trial court's finding, "[b]ased upon George Kuntz's verbal agreement, Bill and Jeff Kuntz rented additional pasture land for the cattle and began to operate the farm/ranch as if the purchase agreements had been executed." This finding supports the trial court's conclusion the parties' oral agreement was binding because the nephews "partially performed on the oral contract substantially to their detriment." There is evidence of "[p]art performance consistent only with the existence of oral contract," *Wachter*, 544 N.W.2d at 132, which "removes the contract from the statute of frauds," *id.*

## IV

[¶ 14] Under appropriate circumstances, specific performance of an obligation may be compelled. N.D.C.C. § 32–04–07. Under N.D.C.C. § 32–04–12(5), an obligation cannot be specifically enforced if its terms "are not sufficiently certain to make the precise act that is to be done clearly ascertainable." "Specific performance cannot be enforced against a party to a contract ... [i]f it is not as to that party just and reasonable." N.D.C.C. § 32–04–13(2). "Generally, an 'agreement to agree' is unenforceable because its terms are so indefinite it fails to show a mutual intent to create an enforceable obligation." *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 434 (N.D.1995). "However, if the terms of an

'agreement to agree' are reasonably certain and definite, it is enforceable." *Id.*

Specific performance may be denied if a contract is not fair, reasonable, and based on adequate consideration. *Sand,* 224 N.W.2d at 378. "And specific performance of an agreement must be denied when its terms are not sufficiently certain to make the precise act which is to be done clearly ascertainable." ... To be specifically enforceable, a contract " 'must be complete in itself ... at least with respect to its essential and material terms ... The court cannot supply an important omission or complete a defective contract for the purpose of specific performance.' " *Id.* [*Manden–Bismarck Livestock Auction v. Kist,* 84 N.W.2d 297] at 302 [(N.D.1957)] (quoting 81 C.J.S., *Specific Performance* § 35).

*Linderkamp v. Hoffman,* 1997 ND 64, ¶ 5, 562 N.W.2d 734. Specific performance rests in the sound discretion of the trial court, and we will interfere only if the trial court abused its discretion. *Id.* A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or its decision is not the product of a rational mental process, *In re Lukens,* 1998 ND 224, ¶ 12, 587 N.W.2d 141, or if it misinterprets or misapplies the law, *Roise v. Kurtz,* 1998 ND 228, ¶ 24, 587 N.W.2d 573. Thus, to be specifically enforceable, an oral agreement must be just and reasonable to the party against whom enforcement is sought, and the agreement must be sufficiently certain that the act to be done is clearly ascertainable.

▄▄▄ [¶ 15] There is evidence George Kuntz agreed to sell his farming assets to his nephews, William and Jeff Kuntz, for less than its full market value. Bert Kuntz testified his brother George Kuntz "said that he's going to give them—give the boys a good deal on the land." Fred Schell, a neighbor of George Kuntz's, testified:

Q. He volunteered that he had sold the farm to Bert's boys?

A. Yeah. He said, "They're taking the farm over." And I guess he even kind of made a little joke out of it, "I give them a little better deal." He said, "I guess where I'm going I don't need the money anyway," you know. So I mean, that was—and he says, "They can't make it if you charge too much," you know.

Further testimony by Schell shows George Kuntz very clearly knew he was selling for less than full market value:

A. Well, that's what he said, you know, "If you charge probably what I could get for it on the market, they probably could never make it on it," you know.

The evidence shows George Kuntz intended to sell his farm assets for less than full market value and give a "good deal" to his nephews, so they could "make it." In light of his evident purpose, there is no evidence the parties' agreement was not, as to George Kuntz, "just and reasonable," as required for specific performance. *See, e.g., Linderkamp,* 1997 ND 64, ¶ 5, 562 N.W.2d 734; *Sand v. Red River Nat'l Bank & Trust Co.,* 224 N.W.2d 375, 378 (N.D.1974); N.D.C.C. § 32–04–13.

▄▄▄ [¶ 16] The nephews' modified written offer, to which George Kuntz assented, was to buy 125 cows with calves, 5 bulls, "Machinery, Equipment, Trucks, Tools etc. (Compete Line)," and 1,055 acres of land for $137,775. It proposed terms of $7,500 down payment, with the balance of $130,-275 "financed via a contract for deed" and paid over a 25 year period, with interest at 5%, 25 annual payments of $9,244, and no penalty for prepayment. The parties' tax consultant suggested the depreciation schedule for the personal property would have to be limited to approximately seven years, and the purchase price be first applied to the purchase of the chattels. George Kuntz and his nephews agreed to those suggestions. Thus, the subject of the contract, the price, the amount of the down payment, the amount financed, the period for which the unpaid balance was to

be paid, the interest rate, the number of payments, and the size of the payments were all definitely stated and agreed upon. Furthermore, there was to be a contract for deed and the purchase price was to be first applied to the purchase of the chattels. We conclude the terms of the parties' agreement are " 'sufficiently certain to make the precise act which is to be done clearly ascertainable,' " *Linderkamp*, 1997 ND 64, ¶ 5, 562 N.W.2d 734 (quoting *Beebe v. Hanson*, 40 N.D. 559, 169 N.W. 31, 32 (1918)), and the agreement is " 'complete in itself ... at least with respect to its essential and material terms,' " *Linderkamp*, at ¶ 5, (quoting *Mandan–Bismarck Livestock Auction v. Kist*, 84 N.W.2d 297, 302 (N.D.1957)).

[¶ 17] The trial court did not abuse its discretion in specifically enforcing the contract by ordering the personal representative of the estate to complete the sale of George Kuntz's farming assets.

## V

[¶ 18] The personal representative argues the trial court erred in not finding undue influence, asserting that, "[b]y enforcing the alleged contract, the Court enables the nephews to take unfair advantage of George's distress and unjustly enriches them through the purchase of substantial assets at less than full market value."

[¶ 19] Under N.D.C.C. § 9–03–03, an apparent consent to a contract is not real or free if obtained through undue influence. N.D.C.C. § 9–03–11 provides:

[¶ 20] Undue influence consists:

1. In the use, by one in whom a confidence is reposed by another or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

2. In taking an unfair advantage of another's weakness of mind; or

3. In taking a grossly oppressive and unfair advantage of another's necessities or stress.

The existence of undue influence is a question of fact. *Perry v. Reinke*, 1997 ND 213, ¶ 12, 570 N.W.2d 224; *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982). The trial court found "[t]here is no evidence presented at trial which would indicate that Bert, Bill, Jeff or any other person caused George to enter into the agreement for the sale by undue influence." There is no evidence the nephews or their father, Bert Kuntz, sought or obtained any unfair advantage of George Kuntz. The trial court's finding is not clearly erroneous.

## VI

[¶ 21] The judgment is affirmed.

[¶ 22] VANDE WALLE, C.J., and NEUMANN, MARING and KAPSNER, JJ., concur.