1999 ND 218

**Don STOUT, Plaintiff and Appellant,**

v.

**FISHER INDUSTRIES, INC., and/or Fisher Sand and Gravel Co., Defendant and Appellee.**

**No. 990173.**

Supreme Court of North Dakota.

Dec. 1, 1999.

Ralph A. Vinje, Vinje Law Firm, Bismarck, N.D., for plaintiff and appellant.

John L. Sherman, Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Don Stout appealed a judgment dismissing his amended complaint against Fisher Industries, Inc., and Fisher Sand and Gravel Co. ("Fisher") for breach of an employment contract. We affirm.

[¶ 2] In March 1995, Stout responded to an advertisement seeking a president of Fisher in Dickinson. He had an interview

with Sheila Fisher, Ken Viall, and three other Fisher representatives in Minneapolis in June 1995. Stout had a second interview in July in Chicago, with Sheila Fisher, Viall, and two other Fisher representatives.

[¶ 3] Stout came to Dickinson in August 1995 to begin employment with Fisher. He refused to go to the office, however, because he did not have a contract with Fisher. Stout, Sheila Fisher, and Viall met in Bismarck on August 30, 1995, and agreed on Stout's base salary of $160,000 per year and agreed to have an incentive program. Stout began working for Fisher. On September 2, 1995, Stout, Sheila Fisher, and Viall executed a document providing in part:

> The following is [sic] eight general terms that were agreed to in the employment of Don Stout by Fisher Industries:
>
> . . . .
>
> 3. An incentive bonus program will be entered into which be [sic] satisfactory to both parties. Based on our discussions this program will either be similar to the program that you had at Dresser or a scaled-up bonus program based on the percentage of profits of the company. Also, the bonus pool concept will be investigated. Any profit-sharing contribution will be deducted from bonus paid on this program.
>
> . . . .
>
> 6. A salary deferral program will be investigated.
>
> . . . .
>
> 8. A severance pay [ ] package will be included in the agreement.

[¶ 4] Stout unsuccessfully continued to attempt to obtain a final written employment contract with Fisher.[1] On June 6, 1996, Stout received a termination letter signed by Gene Fisher, who had assumed control of Fisher when Gene Fisher and Sheila Fisher divorced.

[¶ 5] Stout sued Fisher, alleging in part:

> Stout was hired as President of Fisher Industries, Inc. and was given a contract wherein, among other things, he was to receive a salary of $160,000.00 per year; a bonus based on earnings which would amount to 10% of the increase in earnings over the 1995 earnings up to a 1 million dollar increase, 15% on the increase between 1 and 2 million dollars, and 20% on any increase over 2 million dollars; a severance package which would be three years base pay plus any incentives earned; and other benefits which include the use of a 4–wheel drive vehicle; $20,000.00 for moving and real estate closing expenses; normal company benefits to include Blue Cross health insurance and vacation and sick leave accrual.

Stout sought to recover "three years base pay of $160,000.00 per year, for a total of $480,000.00, plus three years incentive pay in the amount of 1.7 million dollars."

[¶ 6] Fisher moved for summary judgment. Stout opposed Fisher's motion and filed a counter motion for partial summary judgment:

> He further moves the Court that, should the Court find that there is in fact a contract and that the terms are such that there are no issues of fact for a jury to find, that the Court grant him partial summary judgment holding that he is entitled to three years severance pay based on the oral contract which is supplemented by written memorandum thereof, and schedule the matter for a jury trial only as to the issue of the amount of bonus which he should be paid.

The trial court concluded Stout failed to "establish the essential elements of his claim." The court granted Fisher's motion

---

1. Viall had earlier told Stout that Fisher's major stockholders, Gene Fisher and Sheila Fisher, had a divorce action pending. Stout stated in a deposition he wanted a contract with Fisher because of the possibility of a change in the control or ownership of Fisher.

and denied Stout's. The judgment dismissed Stout's amended complaint.

[¶ 7] We briefly review the purposes and standard for summary judgment under N.D.R.Civ.P. 56. Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of factual disputes will not alter the result. *Miller v. Kloeckner*, 600 N.W.2d 881, 1999 ND 190, ¶ 5. Questions of law are fully reviewable. *Id.* All favorable inferences must be drawn in favor of the party opposing a motion for summary judgment, and we assume the truth of the assertions made by the party opposing the motion. *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D.1994). In ruling on a motion for summary judgment, the trial court must consider the substantive burden of proof at trial. *Hurt v. Freeland*, 1999 ND 12, ¶ 8, 589 N.W.2d 551. A party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact. *Id.* A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* Factual assertions in a brief are insufficient to raise an issue of material fact. *L.C. v. R.P.*, 1997 ND 96, ¶ 6, 563 N.W.2d 799; *Northwestern Equip., Inc. v. Badinger*, 403 N.W.2d 8, 10 (N.D.1987).

I

[¶ 8] Stout sought to compel discovery of proposed contracts drafted by Orell Schmitz, who then represented Fisher, based upon information Stout provided Schmitz. The trial court concluded the drafts fell under the lawyer-client privilege of N.D.R.Ev. 502(b). Stout contends the trial court "erred in not giving Stout the document prepared by Orell Schmitz or, in the alternative, allowing him the advantage of having the document construed in his favor." A trial court's discovery decisions will not be reversed on appeal absent an abuse of discretion. *In re Estate of Schmidt*, 1997 ND 244, ¶ 7, 572 N.W.2d 430. We need not decide if the drafts are privileged communications. The drafts, which were not approved or executed by Fisher, would only prove what Stout advised Schmitz to include in the employment contract Stout hoped to execute with Fisher. However, in considering Fisher's motion for summary judgment, all favorable inferences must be drawn in Stout's favor and the truth of his assertions is assumed. *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D.1994). Thus, we assume the draft contracts reflect what Stout advised Schmitz to include and reflect Stout's understanding of the employment contract the parties were contemplating. Production of the requested documents or the trial court's drawing of an adverse inference from their nonproduction by Fisher would add nothing for the purpose of summary judgment. The trial court's error, if any, is not reversible error.

II

[¶ 9] Relying on *Jerry Harmon Motors, Inc. v. First Nat'l Bank & Trust Co.*, 472 N.W.2d 748, 753 (N.D.1991), Stout contends whether or not the parties intended the September 2, 1995, contract to be the final written contract between the parties is a question of fact precluding summary judgment. However, as Stout said in his brief: "The fact that a subsequent written agreement, a standard employment contract, was prepared by the attorney for Fisher Industries, Inc., prevents a factual finding that the 'Summary of Employment Agreement' was a final contract between the parties." Furthermore, Stout said in a deposition the purpose of the September 2, 1995, contract "was basically just to cover me while we

worked out the details of the long-term contract."

[¶ 10] Stout contends: "The agreement between the parties should be found to be an oral contract for three years of severance pay. In the alternative, there should be found to be an oral contract of which the jury can determine the terms." Any oral agreements or understandings the parties had before they executed the written contract of September 2, 1995, were superseded under N.D.C.C. § 9–06–07, which provides "execution of a contract in writing . . . supersedes all the oral negotiations or stipulations . . . which preceded or accompanied the execution of the instrument." Stout contends the September 2, 1995, contract is a "memorandum in support of an oral contract," which is recognized and enforceable under *Johnson v. Auran*, 214 N.W.2d 641 (N.D.1974). However, to satisfy the statute of frauds, N.D.C.C. § 9–06–04, a written memorandum evidencing an alleged oral contract "must contain all the essential or material conditions and terms of the contract." *Id.* at 649–50.

[¶ 11] "Intent and the existence of an oral contract are questions of fact." *Ehrman v. Feist*, 1997 ND 180, ¶ 12, 568 N.W.2d 747. A contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02. The parties' consent must be free, mutual, and communicated to each other. N.D.C.C. § 9–03–01. "Consent is not mutual unless the parties all agree upon the same thing in the same sense." N.D.C.C. § 9–03–16. "[C]ourts will not enforce a contract which is vague, indefinite, or uncertain, nor will they make a new contract for the parties." *Tobias v. North Dakota Dep't of Human Svcs.*, 448 N.W.2d 175, 179 (N.D.1989). To be valid and enforceable, a contract must be reasonably definite and certain in its terms, *Delzer v. United Bank*, 459 N.W.2d 752, 758 (N.D.1990), "so as to ascertain what is required of the parties," *In re Estate of Hill*, 492 N.W.2d 288, 293 (N.D.

1992). An agreement which is so uncertain and incomplete as to any of its essential terms that it cannot be carried into effect without new and additional stipulations between the parties is not enforceable. *Mag Constr. Co. v. McLean County*, 181 N.W.2d 718, 721 (N.D.1970).

[¶ 12] Generally, an agreement to agree is unenforceable because its terms are so indefinite it fails to show a mutual intent to create an enforceable obligation. *Kuntz v. Kuntz*, 1999 ND 114, ¶ 14, 595 N.W.2d 292. "An agreement to agree in the future which is not sufficiently definite to enable a court to give it an exact meaning is not an enforceable obligation." *Bergquist-Walker Real Estate, Inc. v. William Clairmont, Inc.*, 353 N.W.2d 766, 772 (N.D.1984). However, an agreement to agree is enforceable if its terms are reasonably certain and definite. *Kuntz*, at ¶ 14.

[¶ 13] Use of the phrases "[a]n incentive bonus program will be entered into . . . satisfactory to both parties," "[a] salary deferral program will be investigated," and "[a] severance pay [ ] package will be included," in their written contract clearly indicates Stout and Fisher contemplated further negotiation and investigation before reaching an agreement in the future. As we noted, Stout said in a deposition the September 2, 1995, written contract "was basically just to cover me while we worked out the details of the long-term contract." Stout said in his deposition that paragraph 3 did not reflect his understanding of the parties' agreement. As to the salary deferral program in paragraph 6, Stout said, "We never worked out a deferral." Stout recognized the written agreement "says that there will be a severance package included, but it doesn't say what it is or what it's going to be." We conclude the parties clearly intended the September 2, 1995, contract was not the final written agreement contemplated.

[¶ 14] Stout has not shown the parties ever reached an agreement, oral or writ-

ten, about an incentive bonus program, a salary deferral program, or a severance pay package after they executed the agreement of September 2, 1995. Stout has not shown these provisions in the September 2, 1995, agreement are anything more than an agreement to agree about an incentive bonus program, a salary deferral program, and a severance package in the future. These provisions in the September 2, 1995, agreement require further agreement of the parties and are too indefinite to be enforceable.

### III

[¶ 15] Stout asserts Fisher "engaged in a pattern of fraud and/or deceit in order to prevent the written employment contract, promised to be ready for Stout immediately upon his employment with Defendant, from being delivered and executed." The evidence in the record shows the parties did not reach a final agreement, but Stout has not shown it supports an inference of fraud or deceit.

[¶ 16] Aside from the specific provisions of the September 2, 1995 document not at issue here, we conclude the parties had only an agreement to agree, which is unenforceable because its terms are so indefinite it fails to show a mutual intent to create an enforceable obligation.

[¶ 17] The judgment is affirmed.

[¶ 18] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.

