2010 ND 116

**Larry J. HOLBACH, Plaintiff and Appellee**

v.

**Randolph S. HOLBACH, Mitchell D. Holbach, Cynthia E. Strong, Christopher S. Holbach, and all persons unknown, claiming any estate or interest in or lien or encumbrance upon the real estate described in the Complaint, Defendants**

**Randolph S. Holbach, Appellant.**

**No. 20090319.**

Supreme Court of North Dakota.

June 30, 2010.

Thomas M. Jackson (on brief) and Samuel G. Larson (argued), Bismarck, ND, for plaintiff and appellee.

Mark V. Larson (on brief) and Leo F.J. Wilking (argued), Minot, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Randolph Holbach appeals a district court's award of summary judgment to Larry Holbach, granting him quiet title to two quarters of land. We reverse, holding Larry Holbach's title is subject to the conditions set forth in the divorce judgment entered between himself and Judith Holbach.

I.

[¶ 2] Larry Holbach and Judith Holbach married in 1960 and had four children together. In 1976, Larry Holbach and Judith Holbach entered a contract for deed to purchase two quarters of land as joint tenants from Larry Holbach's parents. Judith Holbach and Larry Holbach divorced in 1983. The divorce judgment, which was entered upon the parties' stipulation, detailed their plan for the two quarters:

With respect to the property purchased on the Contract for Deed dated April 12, 1976, the parties agree as follows:

1. Defendant [Larry Holbach] shall have the right to farm the land until the Contract for Deed is paid in full. Defendant may keep all income from said property and shall pay all expenses, including payments as they come due on the Contract for Deed and all real estate taxes.

2. If Defendant shall cease to actively participate in the farming of the above land prior to the completion of the payments on the Contract for Deed, the parties shall lease said land. The parties agree to split the net income after payment of taxes and payments on the contract for deed and any other expenses connected with said property, as follows: to Plaintiff [Judith Holbach]—50%; to Defendant—50%.

3. Upon completion of the payments on said Contract for Deed and so long as Defendant is actively participating in the farming of said land, the Defendant shall have the right to continue farming said land. From the gross profits Defendant shall be paid for farming said land at the going rate at

the time for each farming operation, which includes, but is not limited to the cropping, spraying, fertilizer, summer-fallowing and harvesting. That after payment to Defendant for farming said land there shall be deducted all taxes, insurance and other expenses relating to said land. The net profits or losses, if any, shall be divided and borne as follows: Plaintiff—50%; Defendant—50%.

4. That in the event Plaintiff and Defendant should mutually desire to sell all or any portion of said land during their lifetimes, the proceeds from said sale shall be divided as follows: to Plaintiff—30%; to Defendant—30%; and to the children—40%, unless otherwise mutually agreed between Plaintiff and Defendant.

5. Upon payment of the last installment due on said Contract for Deed, the parties agree that they shall retain title to the following property as joint tenants:

SW 1/4 of Sec. 33, Twp. 155N, Rge. 83W, Ward County, North Dakota.

NE 1/4 of Sec. 33, Twp. 155N, Rge. 83W, Ward County, North Dakota.

The parties agree that they shall by separate agreement contract to devise said property to their four children, namely, Christopher Scott, Randol[ph] Steven, Cynthia Elizabeth, and Mitchell David, in equal shares.

6. Upon the death of either party, the survivor shall receive 100% of the net income (all income, less all expenses, taxes and payments which may be due) during the remainder of the survivor's natural life. Upon the death of the survivor the property shall be distributed to the children in accordance with the separate agreement above mentioned.

Larry Holbach and Judith Holbach never executed the "separate agreement" referenced in paragraph 5 to devise the property to their four children. In September 2001, Larry Holbach's parents forgave the outstanding debt on the property and issued a quit claim deed, conveying it to Larry Holbach and Judith Holbach as joint tenants with the right of survivorship.

[¶ 3] In March 2002, Judith Holbach, then Judith Slorby, died. She had executed a will in February 2002 that attempted to convey her interest in the property to the four children by representation. In March 2003, Randolph Holbach, acting as personal representative of Judith Holbach's estate, issued a deed of distribution attempting to convey Judith Holbach's interest in the property to himself and his three siblings. Larry Holbach then brought a quiet title action against the four children. Randolph Holbach denied his father had a right to quiet title to the property, arguing the children had an interest in the property. Larry Holbach moved for summary judgment.

[¶ 4] The district court granted the motion and issued a judgment quieting title in Larry Holbach. The district court concluded Judith Holbach and Larry Holbach owned the property as joint tenants. The district court stated the joint tenancy was originally created by the 1976 contract for deed, affirmed by the parties in the 1983 divorce judgment, and again confirmed by the 2001 quit claim deed. Because they owned the property as joint tenants, the district court held that, when Judith Holbach died, title immediately passed to Larry Holbach as the surviving joint tenant, and the provision of Judith Holbach's will attempting to convey her interest in the property was inoperative. In addition, the district court found Larry Holbach's title was not restricted by the stipulation for divorce. The district court stated the stip-

ulation demonstrated Judith Holbach and Larry Holbach agreed to execute a separate agreement to devise the property to their four children. However, because they never executed a separate agreement, the district court determined Larry Holbach was not bound to devise the property to the children.

[¶ 5] Randolph Holbach now appeals the summary judgment, arguing the stipulation constitutes a valid contract obligating Larry Holbach to devise the property to the four children. Larry Holbach requests double costs and attorney fees, arguing Randolph Holbach's appeal is frivolous and Randolph Holbach inappropriately included the stipulation, which was not in the record below, in the addendum to his brief.

## II.

[¶ 6] This Court has outlined the standards governing summary judgment under N.D.R.Civ.P. 56 as follows:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genu-

ine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458 (quoting *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 8, 764 N.W.2d 665 (citations omitted)). If the moving party meets its initial burden of proving the absence of a genuine issue of material fact, the party opposing the motion for summary judgment must present competent admissible evidence to show the existence of a genuine issue of material fact. *Barbie*, at ¶ 6. "[M]ere speculation is not enough to defeat a motion for summary judgment." *Id.* (quoting *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 8, 703 N.W.2d 330).

[¶ 7] Randolph Holbach argues the stipulation between his parents constitutes a valid contract that obligates Larry Holbach to devise the property to his four children. Larry Holbach contends Randolph Holbach should be precluded from making this argument because the stipulation was not part of the record before the district court.

[¶ 8] While the stipulation was not part of the record below, the divorce judgment was. "[A] settlement agreement that is wholly incorporated into the divorce judgment is merged into that judgment and ceases to be independently viable or enforceable." *Slorby v. Slorby*, 2009 ND 11, ¶ 4, 760 N.W.2d 89 (quoting *Sullivan v. Quist*, 506 N.W.2d 394, 399 (N.D.1993)); *see also Botner v. Botner*, 545 N.W.2d 188, 190 (N.D.1996) ("[W]hen a stipulation is incorporated into a divorce judgment, we are concerned only with interpretation and enforcement of the judgment, not with the underlying contract."). "[A] judgment rendered in accordance with a stipulation

entered between the parties in a marriage dissolution action is to be regarded and construed as a contract." 24 Am.Jur.2d *Divorce and Separation* § 388 (2008). Randolph Holbach's attorney agreed at oral argument before this Court that the judgment is the controlling document. Thus, because the divorce judgment was part of the record below, and the stipulation is wholly incorporated therein, we hold Randolph Holbach is not precluded from arguing the stipulation constitutes a valid contract that obligates Larry Holbach to devise the property to his four children upon his death.

[¶9] This Court has previously held contracts to devise property are enforceable and become irrevocable upon the death of one of the parties. *See Kuhn v. Kuhn*, 281 N.W.2d 230, 233 (N.D.1979). However, Larry Holbach argues the divorce judgment did not create a contract to devise, but rather an agreement to agree to a contract to devise. As evidence, Larry Holbach notes the divorce judgment provided: "The parties agree that they shall *by separate agreement* contract to devise said property to their four children...." (Emphasis added). Because he and Judith Holbach never executed a separate agreement, Larry Holbach claims no enforceable contract to devise was created.

[¶10] An agreement may be enforceable even if it calls for the subsequent execution of a separate agreement:

It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all *essential terms* that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached.

1 Joseph M. Perillo, *Corbin on Contracts* § 2.8 (3d ed. 1993) (emphasis added) (footnote omitted). *See also* Restatement (Second) of Contracts § 27 (1979) [hereinafter "Restatement"] ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof....").

[¶11] "[A]n agreement to agree is enforceable if its terms are reasonably certain and definite." *Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶12, 603 N.W.2d 52. *See also Lenthe Investments, Inc. v. Service Oil, Inc.*, 2001 ND 187, ¶10, 636 N.W.2d 189; *Kuntz v. Kuntz*, 1999 ND 114, ¶14, 595 N.W.2d 292; *Lire, Inc. v. Bob's Pizza Inn Rests., Inc.*, 541 N.W.2d 432, 434 (N.D.1995). "Indefiniteness as to any *essential element* of the agreement may prevent the creation of an enforceable contract." *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 355 (N.D.1986) (emphasis added) (quoting *Mag Constr. Co. v. McLean County*, 181 N.W.2d 718, 721 (N.D. 1970)). Courts should "construe agreements so as to carry into effect the reasonable intention of the parties, if that can be determined." *Mag Constr. Co.*, at 721.

[¶12] The divorce judgment comprehensively detailed Judith Holbach and Larry Holbach's plan for the property during their lives, upon the death of either, and after the death of both. With regard to ownership, the judgment provided: "Upon payment of the last installment due on said Contract for Deed, the parties agree that they shall retain title to the ... property as joint tenants...." The judgment stated Judith Holbach and Larry Holbach could sell the property if they "mutually desire[d] ... during their lifetimes." If Judith Holbach and Larry Holbach did not sell the property during their lifetimes, the judgment provided: "The

parties agree that they shall by separate agreement contract to devise said property to their four children. . . ." The judgment further provided: "Upon the death of either party, the survivor shall receive 100% of the net income . . . during the remainder of the survivor's natural life. Upon the death of the survivor the property shall be distributed to the children in accordance with the separate agreement above mentioned."

[¶ 13] As this Court has previously explained:

> The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used.

*Thomas v. Stone,* 2006 ND 59, ¶ 11, 711 N.W.2d 199 (quoting *Sullivan v. Quist,* 506 N.W.2d at 401 (citation omitted)).

[¶ 14] The judgment plainly and unambiguously requires the survivor of Larry Holbach and Judith Holbach "to devise said property to their four children." The term "devise" is generally understood to mean to give property by will. *See Black's Law Dictionary* 484 (8th ed.2004). Thus, the judgment creates a clear obligation for Larry Holbach, as the surviving joint tenant, to perform. *See Eastbanc, Inc. v. Georgetown Park Associates II, L.P.,* 940 A.2d 996, 1003 (D.C.2008) ("The enforceability of the agreement comes from the definitive character of the *obligation* to perform, not a precise description of the ways in which the obligation might be fulfilled."). The judgment also provides the basis for determining the existence of breach and giving an appropriate remedy. *See* Restatement § 33(2) (stating contractual terms "are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy"). Because Larry Holbach survived Judith Holbach, he would breach the terms of their agreement if he failed to devise the property to their four children. If Larry Holbach breached the agreement, the four children, as third-party beneficiaries, could petition the court probating Larry Holbach's estate for specific performance under N.D.C.C. § 32–04–07. *See* N.D.C.C. § 9–02–04 ("A contract made expressly for the benefit of a third person may be enforced by that person at any time before the parties thereto rescind it.").

[¶ 15] In granting summary judgment to Larry Holbach, the district court relied upon the fact that the agreement provided for joint tenancy, and the effect of joint tenancy is a right of survivorship. That is correct, but the district court failed to give effect to the entire agreement, which provided for the rights and obligations of the survivor, regardless of whether Larry Holbach or Judith Holbach outlived the other. Larry Holbach, as survivor, is entitled to all income from the property during his survivorship, but he is not free to dispose of the property in violation of the interests created in the four children.

[¶ 16] We hold the stipulation entered by Judith Holbach and Larry Holbach and incorporated into the divorce judgment constitutes an enforceable contract because it creates a clear obligation to perform, and the essential terms are reasonably certain and definite. We overturn the district court's summary judgment quieting title in Larry Holbach because the judgment failed to recognize Larry Holbach's contractual obligation to devise the property to the four children in equal

shares. Larry Holbach's title is subject to the terms of the divorce judgment.

### III.

[¶ 17] Larry Holbach requests double costs and attorney fees. He first contends Randolph Holbach's appeal is frivolous. "If the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs, including reasonable attorney's fees." N.D.R.App.P. 38. "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith." *Healy v. Healy*, 397 N.W.2d 71, 76 (N.D.1986). We conclude Randolph Holbach's appeal is not frivolous or taken in bad faith.

[¶ 18] Randolph Holbach's brief contained an addendum, which included the stipulation that was not in the record below. In his response to Randolph Holbach's motion for judicial notice of the stipulation, Larry Holbach requested this Court impose double costs to sanction Randolph Holbach for including the addendum. "Inappropriate attempts to supplement the evidentiary record at the appellate level cannot be condoned." *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 203 (N.D. 1995); *see also Bublitz v. Tsang*, 2000 ND 100, ¶ 4, 617 N.W.2d 131 (awarding double costs on appeal because appellant included materials in his brief that were not part of the district court's record). Although the stipulation itself was not in the record, there is no dispute about what was in the stipulation and that it was incorporated into the judgment, which was in the record. The judgment, not the stipulation, is the controlling document. We conclude no sanctions are appropriate.

### IV.

[¶ 19] We conclude the other issues raised by the parties are unnecessary to resolve our disposition of this case. We hold Larry Holbach's title is subject to the conditions set forth in the divorce judgment, which is recorded in the real property records of Ward County as Document No. 2796755, and reverse the district court's summary judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J. and MARY MUEHLEN MARING, J., concur.

SANDSTROM, Justice, dissenting.

[¶ 21] Because the district court did not err in concluding Larry Holbach was entitled to judgment as a matter of law, I respectfully dissent. I would affirm the grant of summary judgment.

### I

#### A

[¶ 22] The district court did not err in deciding there were no disputed relevant facts or inferences to be drawn therefrom. As the majority recognizes, "The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court." *Thomas v. Stone*, 2006 ND 59, ¶ 11, 711 N.W.2d 199 (quoting *Sullivan v. Quist*, 506 N.W.2d 394, 401 (N.D.1993) (citation omitted)). "If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Id.*

[¶ 23] The divorce judgment here was plain and unambiguous. The judgment states that the parties agreed to retain title to the property as joint tenants and

that they would "by separate agreement contract to devise" the property to the four children. The divorce judgment further emphasizes the separate agreement by stating, at section VI, paragraph 6, that upon the death of the surviving party, the property would be distributed to the children "in accordance with the separate agreement above mentioned." While the majority correctly notes a person may enter into an enforceable contract to devise property, and this Court has upheld family agreements as enforceable, see *Kuhn v. Kuhn*, 281 N.W.2d 230 (N.D.1979), no such contract was formed here. Larry Holbach and Judith Slorby agreed to agree "by separate agreement," but no such separate agreement was ever attempted or achieved between the parties. Randolph Holbach claims the "separate agreement" reached was Judith Slorby's will. A will, however, is not an agreement. *See, e.g.,* 79 Am. Jur.2d *Wills* § 2 (2002) ("A 'will' is a unilateral disposition of property binding only from the death of the maker, whereas a 'contract' is an agreement drawing its binding force from a meeting of the minds of the parties.").

[¶ 24] Because no separate agreement was ever attempted or achieved, the majority asserts that Larry Holbach and Judith Slorby entered an enforceable agreement to agree. "Generally, an 'agreement to agree' is unenforceable because its terms are so indefinite it fails to show a mutual intent to create an enforceable obligation." *Lire, Inc. v. Bob's Pizza Inn Rests.*, 541 N.W.2d 432, 434 (N.D.1995). "To create an enforceable contract, there must be a mutual intent to create a legal obligation." *Id.* "However, if the terms of an 'agreement to agree' are reasonably certain and definite, it is enforceable." *Id.* In cases where agreements to agree have been invalidated, the parties failed to agree in the future. *Coldwell Banker–*

*First Realty, Inc. v. Meide & Son, Inc.*, 422 N.W.2d 375, 381 (N.D.1988).

[¶ 25] Here, Larry Holbach and Judith Slorby failed to agree between the time of the 1983 divorce judgment and the time of Judith Slorby's death in 2002. Even if Larry Holbach or Judith Slorby could have enforced the agreement to form a contract to devise during their lives, Judith Slorby has died. No contract with specific terms was ever formed, and the terms of the agreement to agree are not reasonably certain and definite such that they can now be enforced. "If any essential term is left open for future consideration, there is no binding contract, and an agreement to agree is not enforceable." 17A Am.Jur.2d *Contracts* § 39 (2004). Only if the terms of an agreement to agree are reasonably certain and definite is it enforceable. *Lire, Inc. v. Bob's Pizza Inn Rests.*, 541 N.W.2d 432, 434 (N.D.1995).

[¶ 26] The uncertainty of the terms of the agreement to agree here is evident. The judgment does not specify how the property would be transferred to the children through the separate agreement, such as through separate wills, mutual wills, a joint will, a deed reserving life estates, a trust with benefit for life, or some other method. While the majority asserts the divorce judgment used the term "devise," which typically means to give property by will, see *Black's Law Dictionary* 484 (8th ed.2004), the judgment also stated the parties agreed they would "by separate agreement contract to" devise the property. There is no dispute between the parties that there were several ways in which this could have occurred.

[¶ 27] Additionally, the divorce judgment reflects the uncertainty of the terms in that the parties agreed, at section VI, paragraph 4, that if they mutually desired to sell all or any portion of the land during their lifetimes, they could do so—making

the possibility of devising the property to the children impossible. This paragraph clearly reflects that there was no absolute or final agreement to convey to the children. The terms of the "agreement to agree" cannot be reasonably certain and definite if the parties were also able to sell the land rather than distribute it to their children.

[¶ 28] Finally, Randolph Holbach concedes Judith Slorby remained in a joint tenancy with Larry Holbach. When asked at oral argument before this Court what interest then passed from Judith Slorby to her children by her will, his attorney responded, "Whatever interest she has in a joint tenancy when a joint tenant survives the party who dies." "It is elementary in this state that, upon the death of one joint tenant, the title to the joint tenancy property vests immediately in the surviving joint tenant." *Estate of Powers*, 552 N.W.2d 785, 787 (N.D.1996). Therefore, "[p]roperty held in joint tenancy is not devisable by will." 79 Am.Jur.2d *Wills* § 165 (2002). Randolph Holbach's attorney claimed at oral argument that the joint tenancy did not end with Judith Slorby's death but continues until Larry Holbach's death, and that Larry Holbach currently holds only a life estate interest in the property. While Larry Holbach and Judith Slorby could have entered an agreement creating life estates for themselves and reserving remainder interests for the children, they failed to do so. In the absence of a separate agreement stating otherwise, Larry Holbach and Judith Slorby remained joint tenants until Judith Slorby's death, at which time the title to the property vested immediately in Larry Holbach, as the surviving joint tenant.

[¶ 29] "If the language used in a judgment is plain and unambiguous, there is no room for construction or interpretation." *Thomas v. Stone*, 2006 ND 59, ¶ 11, 711 N.W.2d 199 (quoting *Sullivan v. Quist*, 506 N.W.2d 394, 401 (N.D.1993) (citation omitted)). In their divorce judgment, Randolph Holbach and Judith Slorby explicitly agreed to remain joint tenants of the property, an agreement that was again reflected in the 2001 quit claim deed. At no time between the 1983 divorce judgment and Judith Slorby's death in 2002 did the parties attempt to enter the agreed-upon "separate agreement" to distribute the land to their children. The district court did not err in concluding that at Judith Slorby's death, title to the property vested immediately in Larry Holbach as the surviving joint tenant. *See, e.g., Estate of Powers*, 552 N.W.2d 785, 787 (N.D.1996) (upon the death of one joint tenant, title to the property vests immediately in the surviving joint tenant). The majority interprets the divorce judgment beyond its plain and unambiguous language.

B

[¶ 30] Randolph Holbach also argued on appeal that the district court erred in not imposing an implied trust, either constructive or resulting. "[I]mplied trusts are equitable remedies." 76 Am.Jur.2d *Trusts* § 128 (2005). "There are two types of implied trusts: resulting trusts and constructive trusts." *McGhee v. Mergenthal*, 2007 ND 120, ¶ 10, 735 N.W.2d 867. A constructive trust has two essential elements, an unjust enrichment and a confidential relationship, while a resulting trust stems from acts or expressions of the parties indicating an intent to form a trust relation. *Id.* at ¶¶ 12, 16. Both constructive and resulting trusts are remedial in the sense that they are devices to prevent wrongful taking or unlawful holding of property. 76 Am.Jur.2d *Trusts* § 132 (2005).

[¶ 31] I would not reverse on the basis of the implied trust argument either. Here, there was no wrongful taking or

unlawful holding of property. The 1976 contract for deed, the 1983 divorce judgment, and the 2001 quit claim deed each stated that Larry Holbach and Judith Slorby held the two quarters of land in joint tenancy. While they agreed to "by separate agreement contract to devise" the property to the children, they failed to agree in the future, and the terms of the agreement to agree are not reasonably certain and definite such that they can now be enforced.

## II

[¶ 32] Because the divorce judgment was plain and unambiguous, the district court did not err in concluding Larry Holbach was entitled to judgment as a matter of law. I would affirm the summary judgment quieting title in Larry Holbach.

[¶ 33] DANIEL J. CROTHERS, J., concurs.